447 Mass. 779 (2006) 779

Doe, Sex Offender Registry Board No. 10216 *v.* Sex Offender Registry Board.

JOHN DOE, SEX OFFENDER REGISTRY BOARD No. 10216 *vs.*
SEX OFFENDER REGISTRY BOARD.

Norfolk. September 7, 2006. - December 5, 2006.

Present: MARSHALL, C.J., GREANEY, IRELAND, SPINA, COWIN, & CORDY, JJ.

*Sex Offender. Sex Offender Registration and Community Notification Act.
Evidence,* Sex offender, Expert opinion. *Administrative Law,* Substantial
evidence.

A hearing examiner with the Sex Offender Registry Board (board) did not err
in classifying the plaintiff as a level three sex offender despite the fact that
the board did not introduce expert testimony or documentary evidence
produced by an expert in preparation for the hearing that substantiated its
determination that the plaintiff posed a high risk of reoffense and
dangerousness, where, under G. L. c. 6, § 178L, the board's use of expert
testimony in support of its position before the examiner is discretionary,
not mandatory. [784-786]
Substantial evidence supported the decision of a hearing examiner with the
Sex Offender Registry Board to classify the plaintiff as a level three sex
offender, where the examiner considered all relevant statutory and regula-
tory factors that pertained to the plaintiff's specific situation; where the
examiner fully considered the reports of two psychologists who concluded
that the plaintiff was not sexually dangerous despite their determinations
that the plaintiff suffered from pedophilia, even though the examiner was
not obligated to review those reports; and where, even assuming that a liv-
ing room or a bedroom in a residence is not a public place, the examiner
was justified in concluding that the plaintiff's commission of the underly-
ing sex offending acts in the presence of the other victims, making detec-
tion more likely because his behavior was observed and could have been
reported, indicated the plaintiff's lack of impulse control or sexual
deviation. [786-790]

CIVIL ACTION commenced in the Superior Court Department on
March 5, 2003.

The case was heard by *Elizabeth B. Donovan,* J., on motions
for judgment on the pleadings.

The Supreme Judicial Court on its own initiative transferred
the case from the Appeals Court.

*Brandon L. Campbell* for the plaintiff.

*Daniel A. Less*, Special Assistant Attorney General, for the defendant.

*Carlo A. Obligato*, Committee for Public Counsel Services, for Committee for Public Counsel Services, amicus curiae, submitted a brief.

IRELAND, J. In allowing the motion of the Sex Offender Registry Board (board) for judgment on the pleadings, a Superior Court judge affirmed the board's decision classifying the plaintiff as a level three sex offender. The plaintiff appealed, arguing that expert testimony is required in the classification process of an offender pursuant to G. L. c. 6, §§ 178K-178M, as appearing in St. 1999, c. 74, § 2.[1] The plaintiff further argues that the board's final classification is not supported by substantial evidence. We transferred the case to this court on our own motion. Because we determine that expert testimony is not required in the classification determination process, and that the board's decision was supported by substantial evidence, we affirm the judge's decision.[2]

*Procedural and factual background.* On August 20, 1998, the plaintiff pleaded guilty to three indictments charging rape of a child with force and ten indictments charging indecent assault and battery on a child under the age of fourteen years. The charges were based on the plaintiff's sexual misconduct toward his daughter, his niece, and two of their friends while they were visiting the residence of the plaintiff's girl friend. Although the hearing examiner makes no reference to the specific places within the residence where the sexual offenses occurred, the police report, which was part of the documentation accompanying the initial classification report, indicates that the plaintiff sexually assaulted the children in a bedroom and on the couch in the living room. The plaintiff was sentenced to from three years to three years and one day for the rape convictions and five years of probation on the indecent assault and battery convictions. While serving his sentence, the plaintiff received

---

[1]General Laws c. 6, §§ 178C-178K, has been frequently amended since 1999. See, e.g., St. 2006, c. 139, §§ 5-31, 132. These amendments are not relevant to this case.

[2]We acknowledge the amicus brief of the Committee for Public Counsel Services.

one disciplinary report for destruction of property and did not participate in sex offender therapy.

In April, 2000, the Commonwealth filed a petition pursuant to G. L. c. 123A, § 12, to have the plaintiff civilly committed as a sexually dangerous person (SDP). The plaintiff was evaluated by two psychologists, Dr. Robert Joss and Dr. Ira Silverman, who concluded that the plaintiff was not sexually dangerous despite their determinations that he suffered from pedophilia. Consequently, a Superior Court judge dismissed the Commonwealth's petition, and the plaintiff was released.

On his release, the plaintiff registered with the board, and the board, simultaneously, commenced the process to determine the plaintiff's recommended classification level. G. L. c. 6, § 178L (1). On September 23, 2002, the board notified the plaintiff of its recommendation that he be classified as a level three sex offender. The board's initial decision was based on the factors listed in 803 Code Mass. Regs. § 1.40 (2002).[3] The plaintiff, in response, filed a request for an administrative hearing to challenge the board's preliminary determination. The plaintiff was afforded counsel based on indigence. G. L. c. 211D, § 2. A de novo hearing was conducted by a hearing examiner on November 21, 2002. G. L. c. 6, § 178L (1) (c).

In making his decision, the examiner heard testimony of Michael Pepe, senior criminal information analyst with the

[3]The board utilizes twenty-four factors to ascertain the appropriate classification level of sex offenders: mental abnormality; repetitive and compulsive behavior; adult offender with child victim; offender's age at first sex offense; adjudicated sexually dangerous person or released from civil commitment; maximum term of incarceration; relationship between offender and victim; weapon, violence, or bodily injury; dates, number, and nature of prior offenses; currently under probation or parole supervision; currently in sex offender-specific treatment; current home situation; physical condition; whether the sex offender was a juvenile when he committed the offense, his response to treatment, and subsequent criminal history; psychological or psychiatric profiles indicating risk to reoffend; substance or alcohol abuse; sex offender treatment while incarcerated; sex offender treatment while on probation or parole; recent behavior while incarcerated; recent behavior while on probation or parole; recent threats; materials submitted by the sex offender and recent behavior and lifestyle of the offender in the twenty-four months prior to the date of notification; victim impact statement; sex offender-specific treatment successfully completed or progressing less than satisfactorily. 803 Code Mass. Regs. § 1.40 (2002).

782 447 Mass. 779 (2006)

Doe, Sex Offender Registry Board No. 10216 *v*. Sex Offender Registry Board.

board, and the plaintiff. The examiner also considered documentary evidence consisting of the board's initial classification report; the plaintiff's treatment report and relapse prevention plan; his request for a hearing; and all correspondence between the board and the plaintiff, including the plaintiff's request for funds for an expert. The examiner denied the plaintiff's request for $1,500 to cover expert fees at the hearing. The examiner, relying on G. L. c. 6, § 178L (1) (*c*),[4] denied the plaintiff's request because the board did not intend to introduce expert testimony or submit a report from its own expert witness prepared specifically for the hearing.

The examiner utilized the factors and principles contained in 803 Code Mass. Regs. § 1.40, promulgated pursuant to G. L. c. 6, § 178K, to affirm the board's initial classification of the plaintiff. In his thirty-five page decision, the examiner first considered three of the six factors supporting a heightened risk of reoffense and public safety danger: mental abnormality; whether the offender's conduct is characterized by repetitive or compulsive behavior; and whether the offender was an adult who committed the offense on a child.[5] G. L. c. 6, § 178K (1) (*a*) (i)-(iii). Because the plaintiff was diagnosed as suffering from pedophilia, the examiner concluded that the plaintiff had a mental abnormality. Additionally, because the plaintiff committed numerous sexual assaults over a two-year period against four "extra-vulnerable" victims ranging in age from two to ten years, the examiner concluded that the plaintiff demonstrated repetitive and compulsive behavior. The examiner also concluded that G. L. c. 6, § 178K (1) (*a*) (iii), applied because the plaintiff was an adult offender who sexually abused four "extra-vulnerable" children. The fact that the plaintiff had been released from prison into the community only eighteen

[4]The examiner stated that he also relied on 803 Code Mass. Regs. § 1. 09(2) (2002), which language concerning expert fees tracks the language of G. L. c. 6, § 178L (1) (*c*).

[5]The other three factors the Legislature has specified as indicating a high risk of reoffense and degree of dangerousness posed to the public are: the age of the offender at the time of the first sex offense; whether the sex offender has been adjudicated to be a sexually dangerous person pursuant to G. L. c. 123A, § 14, or released from civil commitment pursuant to G. L. c. 123A, § 9; and whether the offender served the maximum term of incarceration. G. L. c. 6, § 178K (1) (*a*) (iv)-(vi).

months earlier gave rise to a heightened concern on the examiner's part regarding the plaintiff's potential risk to reoffend.[6]

The examiner also weighed the absence of criminal convictions prior to these offenses, the absence of subsequent arrests, and the plaintiff's maximum supervision probation through May, 2006. The examiner considered the plaintiff's favorable current home situation and compliance with all conditions of probation. The examiner also considered the plaintiff's refusal to participate in sex offender treatment while incarcerated at the Massachusetts Correctional Institution, at Concord,[7] his current involvement in sex offender treatment, and reports diagnosing the plaintiff with pedophilia, a mental abnormality. Additionally, the examiner noted that the plaintiff's offenses, which were committed in the presence of other victims, occurred in a public place where detection was more likely, an indication of the plaintiff's lack of impulse control. The examiner afforded some deference to the reports of Dr. Silverman and Dr. Joss, prepared pursuant to the Commonwealth's petition to commit the plaintiff as a sexually dangerous person pursuant to G. L. c. 123A, § 12. Their reports diagnosed the plaintiff with pedophilia but stated that the plaintiff was unlikely to reoffend if he were involved in long-term treatment, presented a low risk, and did not satisfy the criteria of an SDP. The examiner concluded, however, that their determinations were based on the assumption that the plaintiff would be engaged in long-term therapy and did not reflect the fact that the plaintiff's current participation in therapy was only for eighteen months, portions of which were classified as "somewhat" satisfactory by his current therapist. Based on a preponderance of the evidence, the examiner affirmed the board's recommendation that the plaintiff register as a level three sex offender.

The plaintiff filed a request for judicial review on March 5,

---

[6]The examiner's conclusion that this was a heightened risk is based on 803 Code Mass. Regs. § 1.40(9)(a), which states that "[s]tudies have shown that the likelihood of recidivating decreases for most offenders after the first five to ten years following release from incarceration and becomes substantially lower after ten years in the community."

[7]Although the Massachusetts Correctional Institution, at Concord, provided sex offender treatment, the plaintiff refused to participate in the treatment during the three months he was incarcerated there. The plaintiff was then transferred to the Plymouth County house of correction, where treatment was not offered.

2003, in the Superior Court, arguing that the examiner's decision was unsupported by substantial evidence, was based on errors of law and fact, violated the plaintiff's constitutional rights, and was arbitrary and capricious. The plaintiff simultaneously filed a motion for stay of registration and dissemination that was denied on March 17, 2003. A single justice of the Appeals Court denied the plaintiff's petition for relief. On September 20, 2004, in response to the parties' cross motions for judgment on the pleadings, the Superior Court judge upheld the examiner's decision classifying the plaintiff as a level three sex offender.

*Discussion.* 1. *Expert testimony.* The plaintiff claims that the judge erred in affirming the examiner's decision to classify him as a level three offender because the board lacked expert testimony or documentary evidence substantiating its determination that the plaintiff posed a high risk of reoffense and dangerousness. The plaintiff argues that "[s]ex offender recidivism predictions must be supported by expert evidence" because these type of predictions are "beyond the ken of the fact finder." The plaintiff claims that his position is supported by *Commonwealth* v. *Bruno*, 432 Mass. 489 (2000), where this court held that expert testimony is required at a temporary SDP commitment hearing under G. L. c. 123A, § 12, to determine "[w]hether a person suffers from a mental abnormality or personality defect, as well as the predictive behavioral question of the likelihood that a person suffering from such a condition will commit a sexual offense . . . ." *Id.* at 511. The plaintiff further argues that expert testimony is required in a plethora of technical or scientific areas, including physiological and psychological indications of sexual abuse in children, the effects of posttraumatic stress disorder and battered woman syndrome, medical causation, and the admissibility of medical records. Thus, the plaintiff states, expert testimony is required in the classification process to assess an offender's risk level and is necessary to guide properly the examiner in weighing the factors specified in 803 Code Mass. Regs. § 1.40 and in reaching an objective, actuarial decision. We disagree.

General Laws c. 6, §§ 178C-178P, and G. L. c. 123A are substantially different. General Laws c. 6, § 178L (1) (*c*), allows an indigent sex offender to request expert witness fees

incurred in connection with the offender's appeal from an initial classification by the board. Specifically, the statute states that the board "*may* grant payment of fees for an expert witness *in any case* where the *board* in its classification proceeding intends to rely on the testimony or report of an expert witness prepared specifically for the purposes of the classification proceeding" (emphasis added). *Id.* The plain language of the statute, which uses the permissive word "may" in relation to the use of expert witnesses in classification proceedings, clearly indicates that the Legislature intended the use of experts to be discretionary, not mandatory. See *Kusy* v. *Millbury*, 417 Mass. 765, 769 (1994).

Additionally, the promulgated regulations grant an examiner discretionary authority to approve requests for expert witness fees and mandate that a copy of an expert witness's report be submitted to the opposing party. 803 Code Mass. Regs. §§ 1.09(2), 1.18(5) (2002). If an expert's report includes an opinion as to the offender's risk of reoffense or degree of dangerousness, the author of the report must be called as a witness and qualified as an expert. 803 Code Mass. Regs. § 1.18(6) (2002). If the expert is not called as a witness, the portions of the report that discuss an offender's risk of reoffense and degree of dangerousness will be excluded from consideration. *Id.*

In contrast, G. L. c. 123A involves civil commitment and requires the use of expert testimony because the Commonwealth must prove that an SDP has a mental abnormality that makes the person "likely to engage in sexual offenses if not confined to a secure facility." G. L. c. 123A, § 1. Additionally, the statute requires the Commonwealth to prove two specific elements (mental abnormality or personality disorder and the likelihood that a person suffering from such a condition will commit a sexual offense if not committed). *Id.* Furthermore, expert testimony is necessary in G. L. c. 123A proceedings because the palpable deprivation of a liberty interest is at stake, namely, the potential indefinite civil commitment up to life, whereas G. L. c. 6, §§ 178C-178P, only requires registration. *Commonwealth* v. *Bruno, supra* at 510-511. See *Commonwealth* v. *McLeod*, 437 Mass. 286, 294 n.11 (2002).

The legislative history of these two statutes also is indicative of the Legislature's intent to require expert testimony only in

the context of an SDP commitment. In 1999, the Legislature amended both statutes. See St. 1999, c. 74. The Legislature required, in all SDP proceedings, reports and testimony of two "qualified examiners," licensed psychologists or psychiatrists, who must submit a report to the court pertaining to their examination and diagnosis of an offender and their recommendations. G. L. c. 123A, § 13, as appearing in St. 1999, c.74, § 8. However, the Legislature's revision of G. L. c. 6, §§ 178C-178P, did not include a requirement of the use of expert evidence in classification proceedings. The absence of such a requirement demonstrates that the Legislature determined that expert testimony is unnecessary in these types of proceedings. "Where the Legislature has employed specific language in one [section of an act], but not in another, the language should not be implied where it is not present." *Commonwealth* v. *Dodge*, 428 Mass. 860, 865 (1999), quoting *Care & Protection of Rebecca*, 419 Mass. 67, 76-77 (1994).

Moreover, the Legislature has required that the board be comprised of experts who are knowledgeable and experienced in assessing and evaluating sex offenders in order to develop and promulgate regulations and guidelines for determining the appropriate level of risk and dangerousness an offender poses. G. L. c. 6, § 178K. These regulations are specific and detailed, and here, the examiner fully utilized these factors, imbued with the expertise of the board, and was guided by them in determining the plaintiff's final classification.

In this case, the board did not introduce expert testimony to support its position at the hearing, and the board did not submit evidentiary documents produced by an expert in preparation for this specific classification hearing. Exercising its lawful discretion pursuant to the plain language of G. L. c. 6, § 178L (1) (*c*), the board chose not to rely on expert testimony in this case to support its position that the plaintiff be classified as a level three offender. As such, the board was not statutorily required to present expert testimony in support of its position before the examiner.

2. *Substantial evidence.* The plaintiff claims that the examiner erred in three ways that cumulatively resulted in an arbitrary and capricious decision not supported by substantial evidence.

To determine the validity of an agency's decision, the reviewing court must determine whether the decision is supported by substantial evidence. *Flint* v. *Commissioner of Pub. Welfare*, 412 Mass. 416, 420 (1992). Substantial evidence is "such evidence as a reasonable mind might accept as adequate to support a conclusion." G. L. c. 30A, § 1 (6). In reviewing the agency's decision, the court "shall give due weight to the experience, technical competence, and specialized knowledge of the agency, as well as to the discretionary authority conferred upon it." G. L. c. 30A, § 14 (7). The decision may only be set aside if the court determines that the decision is unsupported by substantial evidence or is arbitrary or capricious, an abuse of discretion, or not in accordance with law. G. L. c. 30A, § 14 (7) (*e*), (*g*).

The plaintiff first claims that the examiner erred by failing to consider several "mitigating" factors sufficiently and disregarding inapplicable factors that "should be interpreted as indicating a decreased risk."[8] The plaintiff's claims have no merit. General Laws c. 6, § 178K, directs the board to consider a noninclusive list of factors relevant to the risk of reoffense. The Legislature included the phrase "not be limited to," indicating that the Legislature envisioned that the board would consider factors relevant to each specific case. G. L. c. 6, § 178K (1). The board also considers "any information useful," including information introduced by the plaintiff. *Doe, Sex Offender Registry Bd. No. 1211* v. *Sex Offender Registry Bd.*, *ante* 750, 762 n.9 (2006).

The statute and the regulations set forth factors that the board should consider in assessing the risk of reoffense that, in turn,

[8]The plaintiff claims that the examiner did not sufficiently consider several "mitigating" factors, including: his age at the time of the offense, his criminal history and lack of subsequent offenses, his expressions of remorse and empathy to the victims, supervised probation and compliance with probation terms, active participation in sex offender therapy and his relapse prevention plan, his past normal sexual relationship with his girl friend, and his current home situation. As discussed above, the examiner did consider all of these factors. The plaintiff suggests that the examiner should have weighed favorably to the plaintiff the inapplicability of 803 Code Mass. Regs. § 1.40(4), (5), (8), (15), and (16) (offender's age at first sex offense; adjudicated sexually dangerous person or released from civil commitment; use of weapon, violence, or bodily injury; psychological or psychiatric profiles indicating risk to reoffend; and substance or alcohol use, respectively), as inevitably decreasing his risk of reoffense and dangerousness.

determines an offender's appropriate classification. G. L. c. 6, § 178K (1). 803 Code Mass. Regs. § 1.40. Neither the statute nor the regulations specify that the inapplicability of a certain factor weighs in favor of an offender. The inapplicable factors do not count against an offender's risk level as they are not considered or weighed in the classification process. Here, the examiner did consider all relevant factors that pertained to the plaintiff's specific situation. Even if the plaintiff's argument was valid that each inapplicable factor should be weighed in his favor, the plaintiff neglects to take into account that three of the six high-risk factors were applicable in his case that support the examiner's conclusion to classify the plaintiff as a level three offender.

The record belies the plaintiff's second claim that the examiner did not fully consider the reports of Drs. Joss and Silverman. These reports concluded that the plaintiff's risk of reoffending and degree of dangerousness is low. However, the examiner's conclusion that these opinions were based on the assumption that the plaintiff would be engaged in long-term treatment is fully supported in the record.[9] The plaintiff neglects to mention that both opinions were based on determinations made prior to his release and were part of the process of determining whether he was sexually dangerous. Although the plaintiff did not fit that definition and there was insufficient evidence for civil commitment, this does not mean that the plaintiff is not a sex offender. A sex offender is defined as "a person . . . who has been convicted of a sex offense . . . on or after August 1, 1981." G. L. c. 6, § 178C. Because the plaintiff satisfies the statutory definition of a sex offender, he is obligated to register with the board.

Even if we accept the plaintiff's argument that the examiner

---

[9]Indeed, Dr. Silverman stated that the plaintiff must participate in sex offender treatment on an outpatient basis if released and develop a relapse prevention plan. He further stated that "[u]ntil [the plaintiff] does so, he will be unable to recognize the kinds of situations and feelings that could prompt new sexual assaults and he would be vulnerable to relapse." Similarly, Dr. Joss stated that "[p]rovided that treatment is group oriented, cognitively based and appropriately confrontative, it is my opinion that [the plaintiff] is at low risk for reoffending in the community." Dr. Joss also mentions in his report that the plaintiff would be expected to be in sex offender treatment during his five years' probation.

failed to give these opinions consideration, the examiner was not obligated to review these reports. The board's regulations define "[e]xpert [w]itness" as: "A licensed mental health professional . . . whose testimony and report offering an opinion as to a sex offender's risk of reoffense and degree of dangerousness were *prepared expressly for reliance by a Party at a hearing conducted pursuant to 803 [Code Mass. Regs. §§ ] 1.07-1.26*" (emphasis added). 803 Code Mass. Regs. § 1.03 (2002). These reports were prepared for the SDP proceeding and not the classification proceedings. Thus, plaintiff's argument that the examiner did not fully consider the expert opinions is meritless.

Third, the plaintiff claims that the examiner erred in classifying his actions as occurring in a "public place," and further claims that the examiner's conclusion is not supported by the language of the regulation. Specifically, the plaintiff argues that the definition of "public place" should not be construed to mean "in the presence or proximity of other victims" but should be limited to "truly public places, like parks or schools." We disagree. Title 803 Code Mass. Regs. § 1.40(9)(c), defines "[p]ublic place" as "an area maintained for or used by the people or community, *or an area that is open to the scrutiny of others*" (emphasis added). The regulation also states that the "commission of any sex offense in a place where detection is more likely" is an indication of an offender's lack of impulse control or sexual deviation. Even assuming that a living room or a bedroom in a residence is not a "public place," we nonetheless agree with the examiner's conclusions that (1) the plaintiff committed the offenses in the presence of the other victims; (2) detection was more likely because his behavior was observed and could have been reported; and (3) the behavior indicated the plaintiff's lack of impulse control or sexual deviation.

Finally, the plaintiff claims that the cumulative effect of the three errors discussed above resulted in an arbitrary and capricious decision that is not supported by substantial evidence. We disagree. Here, there is substantial evidence supporting the examiner's conclusion that the plaintiff poses a high risk of reoffense and dangerousness to the public. As discussed, the

examiner weighed and considered the applicable factors relevant to the plaintiff, including three of the six factors that indicate high risk of reoffense and dangerousness. G. L. c. 6, § 178K (1) (*a*) (i)-(iii), and 803 Code Mass. Regs. § 1.40 (1)-(3). The examiner also considered the plaintiff's recent behavior since his release. However, because the plaintiff had only been released into the community for a short period of time, the examiner's consideration of the plaintiff's short reintegration into the community is a valid concern. Thus, we find that the examiner properly concluded that the plaintiff be required to register as a level three offender.[10]

*Conclusion.* For the reasons set forth above, we conclude that expert testimony is not required in the classification determination process. We further conclude that the examiner's final classification was supported by substantial evidence.[11]

*Judgment affirmed.*

---

[10]The plaintiff argues that the final classification process lacks objective standards and the utilization of the current process violates an offender's due process rights. This issue falls squarely within the holding of *Doe, Sex Offender Registry Bd. No. 3844* v. *Sex Offender Registry Bd., ante* 768, 774-777 (2006), where this court held that G. L. c. 6, § 178K, and the promulgated regulations provide for a specific, detailed classification process that aptly protects an offender's constitutional procedural due process rights.

[11]Although the plaintiff has been classified as a level three offender, he may request a redetermination of his classification three years from the date of his final classification. See 803 Code Mass. Regs. § 1.37C (2004).