Macleod-Mancuso, Bonnie H., J.
The plaintiff brings this action pursuant to G.L.c. 30A, §14 and G.L.c. 6, §178M seeking review of the decision by the Sex Offender Registry Board (“SORB” or “Board") requiring him to register as a Level 3 sex offender. After careful review of the proceedings and the record, the Court affirms the decision of the Board. The Plaintiffs Motion for Judgment on the Pleadings is DENIED and the Defendant’s Motion for Judgment on the Pleadings is ALLOWED.
BACKGROUND
I. SORB Statutes and Regulations
The Board is an administrative agency constituted under the laws of the Commonwealth of Massachusetts. It maintains a central computer registry of all sex offenders, determines whether an offender is required to register as a sex offender, and classifies those offenders required to register. See G.L.c. 6, §178K. A “sex offender” is defined as “a person who resides or works in the commonwealth and who has been convicted of a sex offense . . .” G.L.c. 6, §178C. The Board’s regulations identify four specific criteria that it must consider when undertaking its initial determination of whether a sex offender has a duty to register. See 803 Code Mass. Regs. §1.06(2). The criteria are: (1) whether the offender’s criminal history indicates at least one conviction or adjudication for a sex offense as defined by G.L.c. 6, §178C; (2) the offense is sexual in nature; (3) the offender lives or works in the Commonwealth; and (4) he currently poses a danger. Id. In determining whether a sex offender currently poses a danger, the Board looks at such factors as the offender’s criminal history, the circumstances of the sex offense, the presence or absence of physical harm caused by the offender, whether the offense involved consensual conduct between adults, and other factors which tend to demonstrate whether or not the offender is likely to re-offend. See 803 Code Mass. Regs. §1.06(3).
If an offender is required to register, the Board must recommend a classification level, pursuant to the guidelines contained in 803 Code Mass. Regs. §§1.38-1.41. See 803 Code Mass. Regs. §1.06(4). The public does not have access to a Level 1 offender’s information; certain qualified members of the public can obtain a Level 2 offender’s information, while a Level 3 offender’s information is actively disseminated by local police agencies.
Once an offender receives notice from the Board of its initial recommended classification, he can request an evidentiary hearing to determine his future duty to register and his final classification. See G.L.c. 6, §178L(l)(c). The hearing is a de novo review and is limited to determining by a preponderance of the evidence whether the offender has a duty to register and, if so, what the appropriate classification should be. See 803 Code Mass Regs. §1.01(1). The Hearing Examiner is required to consider the statutory factors enumerated in G.L.c. 6, §178K(l)(a)-(l) in a manner consistent with the Guidelines Recommended Classi *640 fication located at 803 Code Mass. Regs. §§1.38-1.41. See 803 Code Mass. Regs. §1.22(2). The Hearing Examiner’s decision is the final Board decision and the final agency action for purposes of judicial review. See 803 Code Mass. Regs. §1.23.
An offender can seek judicial review of the Board’s final classification pursuant to G.L.c. 6, §178M and G.L.c. 30A, §14. The court must reach its decision within sixty days of the offender’s petition for review. See G.L.c. 6, §178M.
II. Procedural History
In December 1986, the plaintiff was convicted in Middlesex Superior Court of two counts of forcible rape of a child and two counts of indecent assault and battery on a child under fourteen. In February 1995, the plaintiff was convicted in Middlesex Superior Court of two counts of indecent assault and battery on a child under fourteen.
Because these violations are enumerated under the Sex Offender Registry Law, G.L.c. 6, §§178C-178Q, as sex offenses, and because he lived in the Commonwealth, the Board reviewed the plaintiffs sex offender status to determine whether he was required to register as a sex offender. On or about November 6, 2003, the Board notified the plaintiff that he must register as a Level 3 sex offender.
The plaintiff filed a timely challenge to the Board’s recommendation and requested an evidentiary de novo hearing. The hearing was held on March 2, 2005. A decision upholding the Board’s recommendation was rendered on July 11, 2005. The plaintiff then commenced this action on August 5, 2005, and served a motion for judgment on the pleadings upon the Board on January 2, 2008.
III. Factual History
The following factual summary is taken from the administrative record, the transcript of the de novo hearing, the Hearing Examiner’s decision, and the pleadings.
A.The Plaintiffs Convictions
The events giving rise to the plaintiffs first convictions involved the sexual abuse of his step-daughter, his first victim, from the time she was seven years old until she reached twelve years old. During this time, the plaintiff was a “heavy drinker.” In the summer of 1983, the plaintiff engaged in sexual intercourse with the victim. Although the plaintiff denied ever touching his step-daughter, he pled guilty on December 10, 1986 to two counts of rape of a child under sixteen by force and two counts of indecent assault and battery on a child under fourteen. He was sentenced to serve three to five years committed at MCI-Cedar Junction. At his classification hearing, Robert McQueen (“McQueen”) testified on behalf of the plaintiff. He testified that the plaintiff never admitted to McQueen that he had committed the offenses and had made a mistake by pleading guilty.
After his release, the plaintiff re-offended. The victim this time was his seven-year-old step-granddaughter, the daughter of his first victim. The plaintiffs wife saw him with his hand between the victim’s legs. The victim also reported that the plaintiff had put his hands down her underpants, touched her vagina and buttocks, and digitally penetrated her buttocks. He also told the victim not to report the abuse to her mother or grandmother. The plaintiff later denied putting his hands beneath the victim’s underpants.
On February 3, 1995, the plaintiff pled guilty to two counts of indecent assault and battery of a child under fourteen. He was sentenced to nine to ten years at MCI-Cedar Junction with ten years supervised probation until 2015. He was released on August 25, 2003.
B.The Plaintiffs Personal History and Rehabilitation
While incarcerated, the plaintiff did not successfully participate in sex offender treatment. He was terminated from a sex offender treatment group in August 1995. In March 2002, the plaintiff was offered the opportunity to participate in treatment again, but he refused. In January 2004, the plaintiff did begin sex offender treatment. A group co-leader reported that the plaintiff had excellent attendance, arrived on time, took responsibility for his sexual offenses, and did not have thoughts of re-offending.
The plaintiff admitted in this treatment group to a long history of substance abuse. He first used alcohol at the age of fourteen and by 1984, he had the need to participate in a thirty-day detox program. During his first period of incarceration, he spent one week in “alcohol detox,” where he denied he had any substance abuse issues. Mr. McQueen, the plaintiffs witness at the hearing, testified that the plaintiff had issues with alcoholism and attributed the plaintiffs lack of memory about what occurred during the 1995 sex offenses to alcohol consumption. At the time of that hearing, the plaintiff was an employee of Mr. McQueen’s liquor store. A condition of his probation is that the plaintiff seek alcohol treatment.
C.The Hearing Examiner’s Decision and Findings
The Hearing Examiner categorized the plaintiff as a Level 3 sex offender. The decision applied several of the Board’s factors to the facts of this case. For example, the Hearing Examiner found that the repeated molestations of the first victim, coupled with a failure to then control his actions so that he would not re-offend, demonstrated an unwillingness or inability to control his sexual desires.[1] She also found that the plaintiff chose to sexually assault two different child victims, persons who lack the physical or mental strength to resist the plaintiff. This demonstrated an increased level of sexual deviancy.[2] The plaintiff has had multiple sentencing dates and a relatively short period of offense-free, unincarcerated time. This indi- *641 caled a higher risk of the plaintiff re-offending.[3] Additional findings are set forth in the decision.
The Hearing Examiner particularly noted the plaintiffs long struggle with alcohol. The Hearing Examiner recognized that the plaintiff appeared to be sober at the time of the hearing but also observed that he worked in a liquor store. While alcohol did not cause the plaintiff to commit the sexual offenses, the Hearing Examiner suggested that alcohol may unleash an offender’s sexual urges.[4] The Hearing Examiner also noted that the plaintiff did not take full advantage of sex offender treatment while incarcerated.[5]
The Hearing Examiner did consider evidence weighing against dangerousness and the risk of reoffending. She found that the plaintiff had made a favorable adjustment to probation and makes a good effort to comply with his terms of probation. He has taken affirmative steps to maintain a stable living environment. Finally, the Hearing Examiner acknowledged that the plaintiff chose only intra-familial victims.
DISCUSSION
I. Standard of Review
In reviewing the agency’s decision, the court gives “due weight to the experience, technical competence, and specialized knowledge of the agency, as well as to the discretionaiy authority conferred upon it.” G.L.c. 30A, §14(7). The decision may only be set aside if the court determines that the decision is unsupported by substantial evidence or is arbitrary or capricious, an abuse of discretion, or not in accordance with law. G.L.c. 30A, §14(7)(e), (g). Substantial evidence is “such evidence as a reasonable mind might accept as adequate to support a conclusion.” G.L.c. 30A, §1(6). The reviewing judge cannot substitute his or her determination for the one made by the administrative fact finder between two fairly conflicting views. Unlike the Hearing Examiner, a reviewing authority has no opportunity to assess the critical factor of credibility. Morris v. Mass. Bd. of Registration in Med., 405 Mass. 103, 109-14 (1989).
II. Plaintiffs Arguments
A. Lack of Expert Testimony or Evidence
The plaintiff claims that the Board failed to meet its burden of proof because it offered no expert evidence to support its decision that the plaintiff should be classified as a Level 3 sex offender. Expert evidence, however, is not mandatory to find that a sex offender has a high risk of reoffending and is dangerous enough to warrant a Level 3 classification.
First, the statutory language mentions no such requirement. The relevant regulation provides that “in a particular case where the Board intends to rely on the testimony or report of an Expert Witness prepared specifically for the purposes of the registration status and classification hearing, said notification shall inform the sex offender or his Authorized Representative of this intention.” 803 Code Mass. Regs. §1.09(2). Where the offender is indigent, the Board may grant fees to the offender for his own expert. See G.L.c. §178L(c). The statute refers only to a particular case and, therefore, not all cases. If the Board were required to present specific expert evidence in all cases, there would be no need for these provisions.
In addition, G.L.c. 6, §178L(2), requires the Board to support a classification by a “preponderance of the evidence” without further elaboration. The statute, much like the relevant regulation, characterizes the role of expert testimony as discretionary rather than imperative. “(T]he board may grant payment of fees for an expert witness in any case where the board in its classification proceeding intends to rely on the testimony or report of an expert witness prepared specifically for the purposes of the classification proceeding." G.L.c. 6, §178L(l)(c).
Second, the classification process does not require a finding of a “personality disorder” or “mental abnormality,” technical, medical, or biological diagnoses which would necessitate expert testimony. The absence of a need for these determinations suggests that expert evidence is not required in every case.
Third, the relevant statutes require the Board’s seven members include licensed psychologists and psychiatrists with “special expertise in the assessment and evaluation of sex offenders,” criminal justice professionals, and an expert in the study of victims of sexual abuse. G.L.c. 6, §178K(1). Collectively, this mix of individuals, embodying a substantial measure of expertise in the standards and guidelines controlling the classification process, serves as an alternative means of competent determination of classification.
In addition, practical considerations reasonably support a legislative exemption of expert testimony. Mandatory expert testimony in every SORB classification proceeding would impose overwhelming burdens of cost, administration, and delay. More fundamentally, the risk of reoffending is not always a question for expert guidance. Fact finders routinely assess that probability in bail, sentencing, and parole proceedings without the use of experts.
Finally, a decision by the Board that is supported by substantial evidence need not rely on expert evidence. See Doe No. 10216 v. SORB, 447 Mass. 779, 785-86 (2006) (Board not required to present expert evidence in support of its position before the hearing examiner). As the statute does not mandate expert evidence, this argument does not aid the plaintiff.
B. The Conclusions Were Not Supported by Substantial Evidence
The record indicates that the Hearing Examiner’s decision was based on substantial evidence. The decision touches on the various factors which justified classifying the plaintiff as a Level 3 sex offender.[6] It took into account that the plaintiff selected multiple child victims and sexually assaulted at least one of *642 them repeatedly over a period of years. The age of the victims also made a difference in the determination. The Hearing Examiner concluded that the plaintiffs history of alcohol abuse demonstrated a propensity for lawlessness. His relatively recent release into the community also enhanced his risk for reoffending.
The plaintiff now argues that the Hearing Examiner erred in ignoring some of the other factors that may tip in his favor. For example, the defendant may not have been penalized for a violation of Factor 8: Use of Weapons, Force, or Bodily Injury, because he did not use a weapon during the moments of molestation. This argument does not help the plaintiff. Factor 8 was not taken into consideration, because that factor was inapplicable to the circumstances of the case. No weapons or force or bodily injury had a substantial role in the sexual offenses. “(I)napplicable factors do not count against an offender’s risk level as they are not considered or weighed in the classification process.” Doe No. 10216, 447 Mass. 787-88.
The plaintiff next argues that the Hearing Examiner did not give enough weight to the factors that show that the plaintiff is a minimal risk. The record does not support this contention, because the Hearing Officer did point to mitigating factors. The officer acknowledged that the plaintiff was subject to probation and had to attend sex offender treatment programs. The plaintiffs employment, periods of sobriety, successful period of incarceration, and relationship with an adult female were all noted. Contrary to the plaintiffs assertions, the Hearing Officer did recognize his participation in the sex offender treatment program, and the officer considered both his successes as well as failures in that program.
All of these evidentiary considerations on the part of the Hearing Examiner factored into the determination that the plaintiff should be classified as a Level 3 sex offender. The Hearing Examiner’s decision was not arbitrary or capricious and was based on substantial evidence as noted here and in the record.
C. Classification as a Level 3 Sex Offender Violates State and Federal Constitutional Rights
The plaintiff also argues that the failure of the Board to prove that he poses a risk of reoffending and, therefore, requiring him to register as a Level 3 sex offender, is punitive and violates his “federal and state constitutional, statutory and common law rights not to be twice placed in jeopardy for the same offense, not to be subject to ex post facto laws, and not to be subjected to cruel or unusual punishment.”
Case law flatly rejects this argument. It is settled under both federal and Massachusetts constitutional doctrine that sexual offender registration laws are civil and remedial, and not primarily punitive in their purposes. See Smith v. Doe, 538 U.S. 84, 95-96 (2003); Kansas v. Hendricks, 521 U.S. 346, 361 (1997); Commonwealth v. Bruno, 432 Mass. 489, 500 (2000). A party challenging a facially civil remedial statute, such as the sex offender registry law, must provide “the clearest proof’ that the legislation is so punitive in either intent or effect that it negates its characterization as “civil.” See Dutil, Petitioner, 437 Mass. 9, 20 (2002). A regulatory statute causing incident punitive or deterrent consequences does not lose its civil remedial character so long as its primary purpose serves the public safety and welfare. See Opinion of the Justices, 423 Mass. 1201, 1222-23 (1996). The purpose of the sexual offender registry law, the reduction of danger to the community, is facially civil and regulatory.
As a result, the classification and dissemination measures of the Massachusetts legislation do not violate the federal and state prohibitions against double jeopardy. See Commonwealth v. Stone, 45 Mass.App.Ct. 259, 260-61 (1998). Nor are they likely to offend the standard against ex post facto criminal legislation.[7] See Bruno, 432 Mass. 499-502. Nor do they contradict the ban against cruel and unusual punishment. See Opinion of the Justices, 423 Mass. at 1238.
Moreover, the Massachusetts Appeals Court has also recently acknowledged that community notification regarding sex offenders is not punitive but rather a collateral, regulatory measure. Commonwealth v. Olaf O., 57 Mass.App.Ct. 918, 919, rev. denied, 439 Mass. 1107 (2003). The registration and classification system does not violate the plaintiffs federal or state constitutional rights.
III. Conclusion
Based on the foregoing, the Court affirms the Board’s decision requiring the plaintiff to register as a Level 3 sex offender.
ORDER
It is ORDERED that the Plaintiffs Motion for Judgment on the Pleadings is DENIED and the Defendant’s Motion for Judgment on the Pleadings is ALLOWED.

See Factor 2: Repetitive and Compulsive Behavior; Factor 9(c)(3): Multiple Acts Against Same Victim.

See Factor 3: Adult Offender with a Child Victim; Factor 9(c)(4): Extravulnerable Victims; Factor 9(c)(7): Level of Physical Contact.

See Factor 9(b): Propensity for Lawlessness and Anti-Social Behavior; Factor 9(a): Less than Five Years Offense-Free in the Community.

See Factor 16: Substance Abuse and/or Alcohol Abuse.

See Factor 17: Sex Offender Treatment While Incarcerated.

The full list of factors is set out at 803 Code Mass. Regs. §1.40, which includes all the factors articulated by the Legislature in G.L.c. 6, §178K.

Massachusetts law closely parallels the federal courts’ interpretation of the federal Constitution’s Ex Post Facto and Double Jeopardy clauses. See Dutail, Petitioner, 437 Mass. 9, 19-20 n.8 (2002) (expost facto); id. at 19-20 (double jeopardy).