NOTICE:  All slip opinions and orders are subject to formal
revision and are superseded by the advance sheets and bound
volumes of the Official Reports.  If you find a typographical
error or other formal error, please notify the Reporter of
Decisions, Supreme Judicial Court, John Adams Courthouse, 1
Pemberton Square, Suite 2500, Boston, MA, 02108-1750; (617) 557-
1030; SJCReporters@sjc.state.ma.us

COMMONWEALTH OF MASSACHUSETTS

APPEALS COURT

22-P-511

JOHN DOE, SEX OFFENDER REGISTRY BOARD NO. 1483

<u>vs</u>.

SEX OFFENDER REGISTRY BOARD.

<u>MEMORANDUM AND ORDER PURSUANT TO RULE 23.0</u>

The plaintiff, John Doe (Doe), appeals from a Superior

Court judgment affirming his reclassification by the Sex

Offender Registry Board (board) as a level two sex offender.

Doe primarily argues that the level two reclassification should

be vacated because it was not supported by clear and convincing

evidence.  We affirm.

<u>Background</u>.  We summarize the facts as found by the hearing

examiner, "supplemented by undisputed facts from the record."

<u>Doe, Sex Offender Registry Bd. No. 10800</u> v. <u>Sex Offender</u>

<u>Registry Bd</u>., 459 Mass. 603, 606 (2011) (<u>Doe No. 10800</u>).

On March 13, 1978, a woman and her boyfriend were sitting

in a car in Boston around 1:50 <u>A</u>.<u>M</u>.  Doe approached the parked

car, brandished a knife, and robbed the boyfriend of fifty

dollars.  He then forced the woman to accompany him into a

building, raped her, and robbed her of ten dollars.  On May 10, 1978, following a trial in the Superior Court, Doe was convicted of rape, armed robbery, and kidnapping, and sentenced to concurrent State prison terms of from fifteen to twenty-five years on the rape and armed robbery convictions, and from five to ten years on the kidnapping conviction.

On October 21, 1998, "several citizens" reported that Doe "was masturbating in the street for the past couple of weeks."  Doe was subsequently arrested and charged with open and gross lewdness and lascivious behavior, possession of a class D substance, and failure to register as a sex offender.  He pleaded guilty[1] to the lesser included offense of lewd and lascivious behavior.[2]

On November 8, 2004, a woman sitting in the food court at South Station saw Doe "looking right at her while he stroked his penis through the outside of his pants."  She "observed his penis to be erect, through an outline in his pants."  The woman

---

[1] The defendant's criminal offender record information ("CORI") shows the entry of a not guilty finding on the counts of possession of a class D substance and failure to register.
[2] Although Doe was convicted of the lesser included offense only, the hearing examiner found that "the incident of open and gross lewdness and lascivious behavior in fact occurred," in view of the "several citizens" who reported the crime, as well as the corroborating similarities to Doe's pattern of behavior during subsequent sexual misconduct.

left the area, reported the incident, and, upon her return with a security guard, Doe "got up and fled the area."

A few weeks later, on November 29, 2004, the same woman, dining in the same public location, again observed Doe "masturbating while looking at her." The woman subsequently identified Doe from a "photo lineup," and Doe was charged and convicted of two counts of "lewdness, wanton, and lascivious behavior."

On April 8, 2006, a different woman, while sitting with her mother in the lobby of a building, observed Doe sit across from her and place a newspaper across his lap. When the woman made eye contact with Doe, he removed the newspaper from his lap, exposed his penis, and "began to masturbate in front of her and her mother." Although Doe was charged with open and gross lewdness and lascivious behavior, the charge was dismissed. Nonetheless, the board's hearing examiner found "there to be sufficient reliable and credible evidence to believe that the [criminal charge] in fact occurred," and considered this event to be "further sexual misconduct."

On August 3, 2006, the board classified Doe as a level three sex offender. Doe subsequently filed a motion for reclassification and, following a de novo reclassification hearing, a hearing examiner reclassified Doe as a level two sex offender. Thereafter, Doe sought judicial review pursuant to

G. L. c. 30A, § 14, and a Superior Court judge denied his motion for judgment on the pleadings and affirmed the level two classification.  Doe timely appealed.

Discussion.  1.  Standard of review.  A reviewing court may set aside a decision of the board if it determines "that the decision is unsupported by substantial evidence or is arbitrary or capricious, an abuse of discretion, or not in accordance with law" (citation omitted).  Doe, Sex Offender Registry Bd. No. 22188 v. Sex Offender Registry Bd., 101 Mass. App. Ct. 797, 801 (2022).  While we review a judge's consideration of an agency decision de novo, Doe, Sex Offender Registry Bd. No. 523391 v. Sex Offender Registry Bd., 95 Mass. App. Ct. 85, 89 (2019) (Doe No. 523391), we "give due weight to the experience, technical competence, and specialized knowledge of the agency, as well as to the discretionary authority conferred upon it."  Doe, Sex Offender Registry Bd. No. 10216 v. Sex Offender Registry Bd., 447 Mass. 779, 787 (2006), quoting G. L. c. 30A, § 14 (7) (Doe No. 10216).  Doe therefore "bears a heavy burden of establishing that the [board]'s decision was incorrect" (citation omitted). Doe, Sex Offender Registry Bd. No. 3177 v. Sex Offender Registry Bd., 486 Mass. 749, 757 (2021).

2.  Application of statutory and regulatory factors.  Doe contends that the level two reclassification was not supported by substantial evidence because the hearing examiner erred in

the application of board factors 2 (repetitive and compulsive behavior), 7 (relationship between offender and victim), 13 (non-compliance with community supervision), and 29 (offense-free time in the community). See 803 Code Mass. Regs. § 1.33 (2016). The claim is unavailing.

When reviewing a decision by the board, we "must determine whether the decision is supported by substantial evidence," which is defined as "such evidence as a reasonable mind might accept as adequate to support a conclusion." Doe No. 10800, 459 Mass. at 632, quoting Doe No. 10216, 447 Mass. at 787, and G. L. c. 30A, § 1 (6). Our review "does not turn on whether, faced with the same set of facts, we would have drawn the same conclusion, . . . but only whether a contrary conclusion is not merely a possible but a necessary inference" (quotation and citation omitted). Doe, Sex Offender Registry Bd. No. 68549 v. Sex Offender Registry Bd., 470 Mass. 102, 110 (2014) (Doe No. 68549). See also Doe No. 10800, supra at 633 ("It is the province of the board, not this court, to weigh the credibility of the witnesses and to resolve any factual disputes"). Furthermore, the "hearing examiner has discretion . . . to consider which statutory and regulatory factors are applicable and how much weight to ascribe to each factor." Doe No. 68549, 470 Mass. at 109-110.

Here, the record reveals a comprehensive and reasonable analysis and weighing of the various board factors. First, apart from the findings vis-à-vis the four factors now challenged on appeal, the hearing examiner determined that risk elevating factors 8 (weapons, violence, or infliction of bodily injury), 9 (alcohol and substance abuse), 10 (contact with criminal justice system), 11 (violence unrelated to sexual assaults), 12 (behavior while incarcerated or civilly committed), 16 (public place), 19 (level of physical contact), 20 (diverse sexual behavior), and 22 (number of victims) all applied to Doe. Furthermore, the hearing examiner also ascribed full weight to risk mitigating factors 30 (advanced age), 33 (home situation and support systems), and 34 (stability in the community). The hearing examiner also applied factor 32 (sex offender treatment), but gave it minimal weight, as Doe had reoffended after participating in such treatment, thus "calling into question its effectiveness." The record supports the hearing examiner's analysis and application of these myriad factors, and Doe does not challenge them on appeal.

With this background in mind, we return to Doe's claim that because the hearing examiner misapplied factors 2, 7, 13, and 29, he could not have provided a "reasoned analysis" supported by substantial evidence. As to factor 2 (repetitive and compulsive behavior), Doe's counsel acknowledged at oral

argument that in view of the recent Supreme Judicial Court decision in Doe, Sex Offender Registry Bd. No. 6729 v. Sex Offender Registry Bd., 490 Mass. 759, 765 (2022), the hearing examiner did not err in his application of this factor.[3]  See id. (Doe's engagement "in sexual offenses after being convicted of, and while being investigated for, other sex offenses was sufficient to satisfy the separate requirement of proving that his conduct was compulsive as well as repetitive").

As to the claim that the judge erred in applying factor 7 (relationship between offender and victim), Doe did not raise this issue before the hearing examiner or the Superior Court judge.  Accordingly, that argument is waived.  See Doe, Sex Offender Registry Bd. No. 203108 v. Sex Offender Registry Bd., 87 Mass. App. Ct. 313, 321 (2015) (claims that application of certain regulatory factors was arbitrary and capricious "waived because they were not raised below").

As to Doe's claim that the hearing examiner erred in applying factor 13 (non-compliance with community supervision), the record demonstrates that Doe violated probation on three occasions and violated parole for his rape conviction on three occasions.  See 803 Code Mass. Regs. § 1.33(13)(a) ("The Board

---

[3] We acknowledge Doe's counsel's candor in this regard, and further acknowledge the thorough briefing and arguments of the parties.

shall consider the offender who engages in sexual misconduct while on community supervision to pose a greater risk of reoffense and a greater degree of danger to the public").[4]

Finally, we agree with Doe's claim that the hearing examiner erred in determining that Doe had been offense free for fifteen years, as his correct offense-free time in the community was approximately nineteen years, eight months. That notwithstanding, the error was minor where the hearing examiner afforded "full weight to this mitigating factor," even if this meant full weight to fifteen years, rather than nineteen. Moreover, in view of the correct application of the myriad other factors, we cannot say that the reclassification of Doe as a

---

[4] Doe claims that the hearing examiner erred in relying on hearsay to find that the October 21, 1998, incident of open and gross lewdness and lascivious behavior "in fact occurred," even though Doe only pleaded guilty to the lesser included offense of lewd and lascivious behavior. We are not persuaded that the hearing examiner erred or abused his discretion in this regard. See note 2, supra. See also Doe, Sex Offender Registry Bd. No. 10304 v. Sex Offender Registry Bd., 70 Mass. App. Ct. 309, 311-313 (2007) (permissible use of second level hearsay in finding that petitioner committed forcible rape pursuant to G. L. c. 265, § 22A, despite his guilty plea to statutory rape only, pursuant to G. L. c. 265, § 23). Even assuming, arguendo, that the hearing examiner erred, Doe has shown no harm requiring reversal. After a thorough review of the hearing examiner's comprehensive findings and rulings, we cannot conclude on the record before us that the downward reclassification of Doe to a level two sex offender was not based on a "reasoned analysis" supported by substantial evidence. See Doe No. 10800, 459 Mass. at 639 (administrative record showed substantial evidence to support the board's classification, "[e]ven if we were to conclude that the hearing examiner improperly credited the [hearsay] statements" of two victims).

level two sex offender was unsupported by substantial evidence.

To the contrary, the hearing examiner's application and analysis

of all the relevant factors, including but not limited to, Doe's

repetitive and compulsive behavior, substance abuse, criminal

behavior, and violations of the terms of his probation and

parole, viewed in their totality, support the level two

reclassification level.[5]

Upon weighing these factors, the hearing examiner reduced

Doe's classification from a level three to a level two sex

offender.  While Doe does not agree with that result, we

conclude that the hearing examiner's determination that clear

and convincing evidence supported a level two classification was

supported by substantial evidence.  We further conclude that the

---

[5] We note that "[d]etermining an individual's degree of
dangerousness . . . requires a hearing examiner to consider what
type of sexual crime the offender would likely commit if he or
she were to reoffend."  See Doe, Sex Offender Registry Bd. No.
496501 v. Sex Offender Registry Bd., 482 Mass. 643, 651 (2019).
"Pragmatically . . . a hearing examiner would make this
determination based on the sexual crime or crimes that the
offender committed in the past.  Where there is a history of
different sexual offenses, the primary focus would likely be on
the crime or crimes recently committed by the offender."  Id.
"A hearing examiner, however, may consider an offender's older
sexual offenses where they are relevant to a holistic assessment
of the offender's current degree of dangerousness."  Id.  In
light of these requirements, it would be helpful to us if, in
the future, hearing examiners explicitly delineate "what type of
sexual crime the offender would likely commit if he or she were
to reoffend," and explain their consideration of the "offender's
older sexual offenses where they are relevant to a holistic
assessment of the offender's current degree of dangerousness,"
where relevant.  Id.

evidence supported the hearing examiner's determination that Internet publication of Doe's sex offender registration information served a public safety interest, and that the risk, danger, and degree of public access determinations were established by clear and convincing evidence.  See Doe, Sex Offender Registry Bd. No. 496501 v. Sex Offender Registry Bd., 482 Mass. 643, 655 (2019) ("Where a sexually violent offender presents a moderate risk to reoffend and a moderate degree of dangerousness, Internet publication will almost invariably serve a public safety interest by notifying potential victims of the risks presented by the offender in their geographic area. . . . The efficacy of Internet publication in protecting potential victims must be determined based on the facts of each individual case").  Although that implies that the hearing examiner found a moderate risk that Doe would reoffend by committing a contact offense, or a noncontact offense that will put a victim in fear of bodily harm by reason of a contact sex offense, see id. at 659-660,

we think on this record such a finding is supported.[6]

                                <u>Judgment affirmed</u>.

                                By the Court (Rubin, Neyman & Walsh, JJ.[7]),

                                *Joseph F. Stanton*

                                Clerk

Entered:  October 11, 2023.

---

[6] To the extent that we have not specifically addressed additional arguments in the parties' briefs, they have been considered, and do not warrant further discussion.  See <u>Commonwealth</u> v. <u>Domanski</u>, 332 Mass. 66, 78 (1954).

[7] The panelists are listed in order of seniority.