NOTICE: Summary decisions issued by the Appeals Court pursuant to M.A.C. Rule 23.0, as appearing in 97 Mass. App. Ct. 1017 (2020) (formerly known as rule 1:28, as amended by 73 Mass. App. Ct. 1001 [2009]), are primarily directed to the parties and, therefore, may not fully address the facts of the case or the panel's decisional rationale. Moreover, such decisions are not circulated to the entire court and, therefore, represent only the views of the panel that decided the case. A summary decision pursuant to rule 23.0 or rule 1:28 issued after February 25, 2008, may be cited for its persuasive value but, because of the limitations noted above, not as binding precedent. See Chace v. Curran, 71 Mass. App. Ct. 258, 260 n.4 (2008).

COMMONWEALTH OF MASSACHUSETTS

APPEALS COURT

24-P-1048

JOHN DOE, SEX OFFENDER REGISTRY BOARD NO. 528364

vs.

SEX OFFENDER REGISTRY BOARD.

MEMORANDUM AND ORDER PURSUANT TO RULE 23.0

The plaintiff, John Doe, appeals from a Superior Court judgment affirming a Sex Offender Registry Board (board) decision classifying Doe as a level two sex offender. Doe argues that (1) the hearing examiner's decision was not supported by clear and convincing evidence, and (2) the hearing examiner's findings concerning Internet dissemination were insufficiently particularized to Doe's risk of reoffense. We affirm.

Background. We summarize the facts as set forth in the hearing examiner's decision. See Doe, Sex Offender Registry Bd. No. 10800 v. Sex Offender Registry Bd., 459 Mass. 603, 606 (2011).

On October 10, 2020, a seventeen year old girl (the victim) called for a taxi around 1:25 P.M. Doe, the taxi driver, greeted the victim after she entered the taxi. He then told her "If no one has ever told you before, you are beautiful," and "You are very beautiful, you have beautiful eyes, nose, lips, and body." Doe continued to drive without further comment but, before arriving at the victim's intended destination, stopped the car next to an IHOP restaurant. Doe then closed the car's windows, locked its doors, and asked the victim for a kiss. The victim told Doe "No," and that she had a boyfriend. Doe then got into the back seat with the victim, grabbed her hands and said, "Let me kiss you." When the victim tried to pull away from Doe, he grabbed her hands tighter and forcefully kissed her on the mouth and cheeks. The victim told Doe, "Let me go, respect me, I have a boyfriend," to which Doe responded, "No one will find out, he won't know." Doe then grabbed the victim's breasts and vaginal area over her clothing. The victim pushed Doe away and repeatedly told him to let her go. After Doe realized the victim was crying, he stopped. Doe then got out of the backseat and reentered the driver's seat. While Doe drove the victim to her destination, the victim sent text messages to her boyfriend stating that she had been abused and needed help. The victim's boyfriend was waiting for her when she arrived. The victim's boyfriend attempted to confront Doe, but Doe drove

away.  The next day, Doe came to the Revere Police Department with his attorney.  The police made him aware of his charges and placed him in custody.

On March 8, 2022, Doe pleaded guilty to three counts of indecent assault and battery on a person age fourteen or over in violation of G. L. c. 265, § 13H.

Discussion.  A board decision "may only be set aside if the court determines that the decision is unsupported by substantial evidence or is arbitrary or capricious, an abuse of discretion, or not in accordance with law."  Doe, Sex Offender Registry Bd. No. 10216 v. Sex Offender Registry Bd., 447 Mass. 779, 787 (2006) (Doe No. 10216), citing G. L. c. 30A, § 14 (7) (e), (g).

1.  Doe's risk of reoffense and dangerousness.  To classify a person as a level two sex offender, the hearing examiner must make three explicit determinations by clear and convincing evidence:

> "(1) that the risk of reoffense is moderate; (2) that the offender's dangerousness, as measured by the severity and extent of harm the offender would present to the public in the event of reoffense, is moderate; and (3) that a public safety interest is served by Internet publication of the offender's registry information."

Doe, Sex Offender Registry Bd. No. 496501 v. Sex Offender Registry Bd., 482 Mass. 643, 644 (2019) (Doe No. 496501).  In making these determinations, "[t]he hearing examiner has discretion to determine how much weight to ascribe to each

3

factor under consideration." Doe, Sex Offender Registry Bd. No. 23656 v. Sex Offender Registry Bd., 483 Mass. 131, 138-139 (2019) (Doe No. 23656).

Doe challenges the hearing examiner's findings that Doe's risk of reoffense was moderate and that any reoffense would present a moderate degree of dangerousness to the public. First, he argues that it was error to give moderate weight to factor 11 (violence unrelated to sexual assaults) where the allegation that Doe had assaulted his former girlfriend was based on a single police report of the incident, and where the hearing examiner only gave minimal weight to factor 10 (Doe's contact with the criminal justice system). Second, Doe contends that the evidence of his home situation and support system as well as his materials submitted regarding stability in the community show that his risk of reoffense and degree of dangerousness are low.

a. Doe's violence unrelated to sexual assaults. The hearing examiner credited an August 13, 2018 police report entered in evidence. In the report, the police officer states that he saw Doe assault a woman who was Doe's then-girlfriend in the back of a car. Doe acknowledges that the hearing officer "was entitled to construe the police report," but contends that she should not have accepted "all of its components without scrutiny," particularly because the Commonwealth filed a nolle

4

prosequi for Doe's charge, assault and battery on a household or family member in violation of G. L. c. 265, § 13M, stemming from this incident. We are not persuaded.

A hearing examiner "may admit and give probative effect to that evidence 'which reasonable persons are accustomed to rely in the conduct of serious affairs,'" including hearsay evidence "if it bears sufficient indicia of reliability." Doe, Sex Offender Registry Bd. No. 523391 v. Sex Offender Registry Bd., 95 Mass. App. Ct. 85, 89 (2019) (Doe No. 523391), quoting Doe, Sex Offender Registry Bd. No. 356011 v. Sex Offender Registry Bd., 88 Mass. App. Ct. 73, 76 (2015). "When reviewing an examiner's determination that hearsay evidence is substantially reliable, we ask whether it was reasonable for the examiner to admit and credit the facts described in the hearsay evidence" (quotation and citation omitted). Doe No. 523391, supra.

Here, the hearing examiner explicitly considered and analyzed evidence of the report's reliability, including the fact that the officer who wrote the report saw the incident himself, described the incident in detail, and wrote that the alleged victim confirmed what the officer saw. See Doe No. 523391, 95 Mass. App. Ct. at 89 ("Common indicia of reliability include a detailed account; the consistency of the hearsay incident with other, known behavior; . . . and independent

5

corroboration" [citations omitted]). We discern no error in the hearing examiner's consideration of the police report. See Id.

Doe further asserts that the hearing examiner's decision to give minimal weight to Doe's contact with the criminal justice system while giving moderate weight to his violent acts unrelated to sexual assaults was "lacking in logical consistency." We disagree. In fact, weighing these factors differently shows that the hearing examiner approached each factor carefully. See Doe, Sex Offender Registry Bd. No. 356315 v. Sex Offender Registry Bd., 99 Mass. App. Ct. 292, 299 (2021) ("It is apparent from the hearing examiner's careful weighing of the factors, . . . including his decision to not give full weight to some aggravating factors, that the classification is based on a sound exercise of informed discretion rather than the mechanical application of a checklist or some other reflex" [quotation and citation omitted]). The hearing examiner appropriately weighed each factor in crediting the police officer's report that the defendant had committed an act of violence while simultaneously recognizing that Doe's contact with the criminal justice system itself was minimal. See Doe No. 23656, 483 Mass. at 138, quoting G. L. c. 30A, § 14 (7) ("we 'give due weight to the experience, technical competence, and specialized knowledge of the agency, as well as to the discretionary authority conferred upon it'").

b. Doe's mitigating factors. Doe also argues that the hearing examiner should not have classified Doe as a level two sex offender when she also gave full mitigating weight to his home situation and support system and to his stability in the community. The claim is without merit.

The weight given to the factors is left to the sound discretion of the hearing examiner and will not be disturbed unless "the court determines that the decision is unsupported by substantial evidence or is arbitrary or capricious, an abuse of discretion, or not in accordance with law." Doe No. 10216, 447 Mass. at 787. See Doe No. 23656, 483 Mass. at 138-139. Here, the hearing examiner weighed the mitigating factors[1] against Doe's risk-elevating factors in reaching her ultimate conclusion. Doe assaulted a stranger in public while in a position of trust as a taxi driver. The hearing examiner also appropriately considered the report that Doe had been charged with assault and battery on a family or household member in 2019. We decline to reweigh these factors. See id.; Doe, Sex Offender Registry Bd. No. 68549 v. Sex Offender Registry Bd., 470 Mass. 102, 110 (2014), ("[o]ur review does not turn on

---

[1] The hearing officer also considered Doe's age and his compliance with his probationary conditions imposed as a result of his index offenses as mitigating factors. She gave minimal weight to Doe's age because Doe committed his index offenses at the already advanced age of forty and was forty-two years old at the time of his board hearing.

7

whether, faced with the same set of facts, we would have drawn the same conclusion as an agency or local board, but only whether a contrary conclusion is not merely a possible but a necessary inference" [quotation and citation omitted]).

2. Internet publication. A hearing examiner must make an explicit determination that "a public safety interest is served by Internet publication of the offender's registry information." Doe No. 496501, 482 Mass. at 644.

Contrary to Doe's contention that the hearing examiner did not make particularized findings supporting Internet publication of Doe's offender information, the hearing examiner considered the fact that Doe committed his index offenses against a stranger while in a position of public trust as a taxi driver and while in public. She further noted that Doe's index offenses suggested that if he reoffended, it would likely be against a stranger in public and concluded that women in the community should have access to Doe's registry information to take steps to protect themselves. This was sufficient to show that, "in light of the particular risks posed by the particular offender, Internet access to that offender's information might realistically serve to protect the public against the risk of the offender's sexual reoffense." Doe No. 496501, 482 Mass. at 655. See Doe No. 23656, 483 Mass. at 145 (plaintiff's offenses committed against strangers in public locations warranted

8

Internet publication so that members of public could "take precautions to avoid encountering [plaintiff] in situations in which the members of the public are vulnerable").

Judgment affirmed.

By the Court (Meade,
Desmond & Wood, JJ.[2]),

Clerk

Entered:  May 7, 2026.

---

[2] The panelists are listed in order of seniority.