457 Mass. 53 (2010)                          53

Doe, Sex Offender Registry Board No. 3974 *v.* Sex Offender Registry Board.

JOHN DOE, SEX OFFENDER REGISTRY BOARD No. 3974 *vs.* SEX
OFFENDER REGISTRY BOARD.

Barnstable. February 11, 2010. - June 4, 2010.

Present: MARSHALL, C.J., IRELAND, SPINA, COWIN, CORDY, BOTSFORD, & GANTS, JJ.

*Sex Offender Registration and Community Notification Act. Waiver. Practice,
Civil,* Waiver. *Jurisdiction,* Administrative matter. *Administrative Law,*
Failure to raise issue before agency.

In the circumstances of a plaintiff's appeal from a Superior Court judge's
decision affirming his classification as a level two sex offender by the sex
offender registry board (board), the plaintiff's argument that he was not a
"sex offender" within the meaning of G. L. c. 6, § 178C, because he did
not reside in Massachusetts at the time of his classification did not implicate
the board's subject matter jurisdiction and was therefore waived by the
plaintiff's failure to raise the argument during proceedings before the
board, which had before it sufficient evidence to satisfy a prima facie
showing of the plaintiff's residence. [56-59]
A plaintiff who did not object to his final classification as a level two of-
fender by the sex offender registry board (board) waived the ability to as-
sert on appeal that the classification of an incarcerated person is beyond
the authority of the board [59-62] or that the board infringed his right to
due process by depriving him of the opportunity to show how specific
conditions of his release might mitigate his risk of reoffense and threat to
the public [62-63].

CIVIL ACTION commenced in the Superior Court Department on
July 26, 2005.

The case was heard by *Richard F. Connon,* J.

After review by the Appeals Court, the Supreme Judicial
Court granted leave to obtain further appellate review.

*Jason Benzaken* for the plaintiff.

*Beatriz E. Van Meek,* Special Assistant Attorney General
(*Jennifer K. Zalnasky* with her) for the defendant.

*Brandon L. Campbell,* for Committee for Public Counsel
Services, amicus curiae, submitted a brief.

CORDY, J. In 1992, the plaintiff, then fifteen years of age, was
adjudicated delinquent after committing an indecent assault and

battery on a child under the age of fourteen. The next decade of his life yielded a marred, albeit nonsexual, criminal record that culminated, for purposes of this case, in a guilty plea in Federal court on one count of distributing a controlled substance. While in Federal custody pending sentencing on the latter charge, the plaintiff was incarcerated in several locations. He began his incarceration in a Federal detention facility in Rhode Island but was soon transferred to Massachusetts facilities. In 2004 and 2005, the plaintiff was being held in the Barnstable County house of correction.

During his stay there, but before he was sentenced on his Federal conviction, the Sex Offender Registry Board (board) classified him as a level two sex offender.[1,2] On de novo review, a hearing examiner affirmed the plaintiff's classification, as did the Superior Court judge who heard the plaintiff's appeal pursuant to G. L. c. 6, § 178M, and G. L. c. 30A, § 14. Before the board and in the Superior Court, the plaintiff argued only that

---

[1]At the time of his classification in 2005, the plaintiff was still awaiting sentencing for his 2001 Federal drug conviction. There is nothing conclusive in the record to explain this delay, although it appears related to the uncertainty surrounding the Federal sentencing guidelines at the time. See *Blakely* v. *Washington*, 542 U.S. 296, 305 (2004); *Apprendi* v. *New Jersey*, 530 U.S. 466, 496-497 (2000). Although still in effect at the time of the classification, the Federal sentencing guidelines were under challenge. See *United States* v. *Booker*, 375 F.3d 508 (7th Cir.), cert. granted, 542 U.S. 956 (2004), aff'd, 543 U.S. 220, 226-227 (2005).

[2]Prior cases have set out the classification scheme at length. See, e.g., *Doe, Sex Offender Registry Bd. No. 1211* v. *Sex Offender Registry Bd.*, 447 Mass. 750, 755-757 (2006), quoting *Roe* v. *Attorney Gen.*, 434 Mass. 418, 423-426 (2001). Classification is a two-step process. See *Doe, Sex Offender Registry Bd. No. 3844* v. *Sex Offender Registry Bd.*, 447 Mass. 768, 771-772 (2006).

In the first step, once it learns that a correctional facility is housing a sex offender, see G. L. c. 6, § 178E (*a*), the Sex Offender Registry Board (board) makes a recommended classification. See G. L. c. 6, § 178L (1) (*a*); 803 Code Mass. Regs. § 1.06(5)-(6) (2004). The second step of the process is the finalization of the recommended classification, which can occur in one of two ways. The offender may request a de novo hearing to determine what final classification, if any, is appropriate, see G. L. c. 6, § 178L (1) (*a*), (2); 803 Code Mass. Regs. §§ 1.07, 1.10 (2002), after which judicial review pursuant to G. L. c. 30A, § 14, is available. G. L. c. 6, § 178M. Alternatively, the offender may waive the right to a hearing by failing to request one, which results in the board's recommended classification becoming final and precludes judicial review of the final classification. See G. L. c. 6, § 178L (1) (*a*), (2); 803 Code Mass. Regs. § 1.13 (2002).

his record and circumstances supported classification as a level one offender, as opposed to a level two offender.

In an unpublished memorandum and order pursuant to its rule 1:28, the Appeals Court affirmed the plaintiff's classification. *Doe, Sex Offender Registry Bd. No. 3974* v. *Sex Offender Registry Bd.*, 74 Mass. App. Ct. 1102 (2009). It also rejected his newly raised claims that the board lacked subject matter jurisdiction to classify him and that the board lacked the authority to classify him until his release was imminent. We granted the plaintiff's application for further appellate review.

The plaintiff raises three arguments on appeal, all of which, on review, have been waived. First, as a threshold matter, he challenges what he terms as the board's "subject matter jurisdiction" over his case. Simply put, the plaintiff asserts that the board's jurisdiction extends only to those sex offenders who "reside[]" in the Commonwealth, G. L. c. 6, § 178C, as amended through St. 2003, c. 77, §§ 1-3, and that residence requires more than happenstance presence in a Massachusetts correctional facility.[3] The Appeals Court held that this argument could not be waived and concluded that the board had subject matter jurisdiction over the plaintiff's case. Second, the plaintiff argues that an incarcerated sex offender poses no risk of reoffense or threat to the public, and therefore that such individuals cannot be classified as level two sex offenders. Third, he claims that his right to due process was infringed when the board acted without waiting to learn what sentence he would receive on his Federal drug charge, essentially depriving him of the opportunity to show how specific conditions of his release might mitigate his risk of reoffense and threat to the public. The Appeals Court held that these latter two arguments had been waived.

We take up each of the plaintiff's arguments in turn and affirm the plaintiff's classification.[4]

---

[3]The definition of "[s]ex offender" in G. L. c. 6, § 178C, has been amended since the plaintiff's classification. St. 2006, c. 139, §§ 5, 6. A "[s]ex offender" is now defined as a person who "resides, has secondary addresses, works or attends an institution of higher learning in the commonwealth." We make no determination with respect to the effect of the addition of "secondary addresses" on the plaintiff's arguments.

[4]We acknowledge the amicus brief filed by the Committee for Public Counsel Services.

1. *Claimed lack of subject matter jurisdiction.* The plaintiff's primary challenge to his classification is that the board lacked subject matter jurisdiction over his case. At the time of his classification, G. L. c. 6, § 178C, defined a "[s]ex offender" as "a person who resides . . . in the commonwealth and who has been convicted of a sex offense or who has been adjudicated as a youthful offender or as a delinquent juvenile by reason of a sex offense."[5] In essence, the plaintiff argues that he was not a "sex offender" because, having been transferred to the Barnstable County house of correction involuntarily, he did not "reside" in Massachusetts. Therefore, he contends that the board acted beyond its authority when it classified him, and that an incarcerated person only "resides" in Massachusetts when there is evidence that the person intends to live in the State after release.

Given the fact that the plaintiff neglected to raise this issue until his case reached the Appeals Court, there is a strategic explanation for why he has couched his argument in terms of subject matter jurisdiction. As we have said, "questions of subject matter jurisdiction 'may be raised at any time' . . . and are not waived even when not argued below." *Commonwealth* v. *DeJesus,* 440 Mass. 147, 151 (2003), quoting *Commonwealth* v. *Cantres,* 405 Mass. 238, 240 (1989). Thus, provided that questions concerning a person's residence implicate the subject matter jurisdiction of the board, the plaintiff's failure to raise the issue before the board is excusable. However, if the plaintiff's argument does not implicate subject matter jurisdiction, then it is waived.

"Subject matter jurisdiction is 'jurisdiction over the nature of the case and the type of relief sought' . . . ." *Middleborough* v. *Housing Appeals Comm.,* 449 Mass. 514, 520 (2007), quoting Black's Law Dictionary 870 (8th ed. 2004). It is divided "among the various trial courts and administrative agencies [and] 'is both conferred and limited by statute.' " *Middleborough* v. *Housing Appeals Comm., supra,* quoting *Edgar* v. *Edgar,* 403 Mass. 616, 619 (1988). The question at the heart of subject matter jurisdiction is, "Has the Legislature empowered the [agency] to hear cases of a certain genre?" *Wachovia Bank,*

---

[5]The plaintiff does not dispute that his delinquent adjudication for assault and battery on a child under the age of fourteen is a qualifying sex offense.

*Nat'l Ass'n* v. *Schmidt*, 546 U.S. 303, 316 (2006). See *Konstantopoulos* v. *Whately*, 384 Mass. 123, 127 (1981) ("despite breadth of this jurisdictional grant [of general equity jurisdiction], the Probate Courts remain courts of limited jurisdiction").

The Legislature has empowered the board to hear one particular "genre" of cases, the classification process. *Doe, Sex Offender Registry Bd. No. 972* v. *Sex Offender Registry Bd.*, 428 Mass. 90, 92-93 (1998), quoting G. L. c. 6, § 178K ("general charge of the board is to: 'promulgate guidelines for determining the level of risk of reoffense of sex offenders [and] apply the guidelines to assess the risk level of particular offenders"). There is no other "avenue" of classification; classification of sex offenders is exclusively the province of the board. See *id.*

The "nature of the case" assigned to the board is distinguishable from the elements of a prima facie case before the board. See *Sperounes* v. *Farese*, 449 Mass. 800, 806 (2007) ($25,000 limit for cases filed in District Court is "procedural," not "jurisdictional," and must be raised in answer or will be waived); *Middleborough* v. *Housing Appeals Comm.*, *supra* at 520-521 (prerequisite that project be "fundable" in order to challenge comprehensive permit decision was "substantive," not "jurisdictional"). Thus, the plaintiff is correct that a "sex offender" is a person who "resides" in Massachusetts, but he is incorrect that this predicate fact constitutes a subject matter jurisdiction threshold. The board was required to establish that the statutory definition of "sex offender" applied to the plaintiff, but that was a question of substance, not subject matter jurisdiction. See *id.*[6]

Once stripped of its subject matter jurisdiction label, it is clear that the plaintiff has waived his argument by failing to raise it until he reached the Appeals Court. In general, "[o]ur court has long followed the rule that '[i]n the absence of a statutory directive to the contrary, the administrative remedies

[6]Subject matter jurisdiction, of course, frequently turns on the geographic ties of a party, at least in Federal court. Because art. 3 of the United States Constitution confers on Federal courts jurisdiction only where a Federal question of law is present, or where a controversy exists between citizens of different States, the citizenship of parties rightly is classified as a question of subject matter jurisdiction. See *Caterpillar Inc.* v. *Lewis*, 519 U.S. 61, 67-68 (1996). Diversity of citizenship defines the "category" of the case in Federal court. See *Wachovia Bank, Nat'l Ass'n* v. *Schmidt*, 546 U.S. 303, 316-317 (2006).

should be exhausted before resort to the courts.' " *East Chop Tennis Club* v. *Massachusetts Comm'n Against Discrimination*, 364 Mass. 444, 448 (1973), quoting *Gordon* v. *Hardware Mut. Cas. Co.*, 361 Mass. 582, 587 (1972). Even when arguments relate to predicate facts that are "jurisdictional" in nature (because they are predicate to agency action), the rule of exhaustion applies. See *East Chop Tennis Club* v. *Massachusetts Comm'n Against Discrimination, supra* at 451. This is reflected in the terms of G. L. c. 30A, § 14 (7), which permits the Superior Court to overturn an agency action made "[i]n excess of the statutory authority or jurisdiction of the agency," but only "upon consideration of the entire record." Thus, when a party neglects to raise an issue during agency proceedings, the reviewing court lacks a record on which to evaluate questions of statutory authority or jurisdiction. Where the Legislature has selected an agency as the primary finder of facts, courts "must give effect to the orderly administrative process set up by the Legislature and permit the [agency] to make the decisions entrusted to it." *Id.* at 452. This is one of those cases.

In this case, the plaintiff's argument concerning his residence is based entirely on what the board *did not know* when it classified him. He asserts that the board had no information about where he intended to reside after his release from prison, and he then proceeds to argue that this thus deprived the board of its authority to classify him. The notion that the board might claim the power to classify incarcerated individuals who have been transferred into Massachusetts on a temporary and involuntary basis does, indeed, raise concerns. However, because the plaintiff never raised this point to the board, we have no indication that the board tried to assert such sweeping authority. Instead, the record includes sufficient evidence to satisfy a prima facie showing of the plaintiff's residence.

The Appeals Court held, citing *Commonwealth* v. *Becker*, 71 Mass. App. Ct. 81, 88 (2008), that the plaintiff's incarceration in Massachusetts was enough to qualify him as a resident for purposes of G. L. c. 6, § 178C. However, much more was present than temporary incarceration, thus obviating the need to rely on such a narrow ground. The record indicates that the plaintiff was born in Massachusetts and that he spent his youth here. Indeed, the underlying sex offense that triggered his classifica-

tion occurred and was adjudicated in Massachusetts. The record also shows that he was married and living with his wife in Massachusetts when he was arrested on his Federal drug charge. There was no evidence, aside from his temporary incarceration in Rhode Island, that the plaintiff ever lived or intended to live anywhere but Massachusetts. Coupled with his presence in the Barnstable County house of correction, these facts are enough to deem the plaintiff a resident of Massachusetts. See *Phillips* v. *Boston*, 183 Mass. 314, 315 (1903) ("Ordinarily, the word 'resides' may be construed as having a residence in a place and to be there settled as a home . . ."). The plaintiff was entitled to rebut these facts, G. L. c. 6, § 178L (1) (*a*), but he opted to offer no evidence of his own.

Therefore, even had he not waived his argument concerning his residence, the plaintiff would have lost on the merits. Under G. L. c. 30A, § 14 (7), a reviewing court would have examined the record to determine if the plaintiff was a resident of Massachusetts within the meaning of G. L. c. 6, § 178C. That record, as we have shown, was of the plaintiff's own making, and would have been fatal to his argument.

2. *Other claims.* The Appeals Court concluded that the plaintiff's other claims, both of which concern the timing of the board's action, were waived. We agree.

The plaintiff's first argument is that because an incarcerated sex offender is behind bars, he does not pose a current risk of reoffense or a threat to the public, and therefore cannot be required to register as a sex offender. The plaintiff did not make this argument before the hearing examiner. Instead, he argued that a level one classification was more appropriate because he was facing a potentially long (but, at that time, indeterminate) sentence for his Federal drug conviction. The claim he raises now, that the classification of an incarcerated person is beyond the authority of the board, is very different.

In its most compelling form, the plaintiff's argument is that the board's authority to classify incarcerated sex offenders is limited to making *initial* rather than *final* classifications. See *Doe, Sex Offender Registry Bd. No. 3844* v. *Sex Offender Registry Bd.*, 447 Mass. 768, 771-772 (2006) (discussing two-step classification process, beginning with initial classification followed by final classification based either on de novo hearing or

sex offender's failure to object to initial classification). This argument is founded on a strict interpretation of G. L. c. 6, and proceeds as follows. The Legislature has indicated that it knows how to differentiate between "final" and "initial" classifications. Thus, G. L. c. 6, §§ 178I and 178J (*c*), both make use of the word "finally" when discussing public access to offender classification information.[7] In contrast, G. L. c. 6, § 178E (*a*), the section that concerns the classification of incarcerated sex offenders, does not use the word "final" when describing the classification of such offenders.[8] Thus, one construction of the statute might be that the board must wait until an incarcerated sex offender's release is imminent before making a final classification. The argument is an interesting one, although not without its flaws. For example, the board is *required* to classify incarcerated sex offenders before they are released: The board must begin classification proceedings at least sixty days prior to the offender's

---

[7]General Laws c. 6, § 178I, provides in pertinent part:

"Information about an offender shall be made available pursuant to this section only if the offender is a sex offender who has been *finally* classified by the board as a level 2 or level 3 sex offender" (emphasis added).

General Laws c. 6, § 178J (*c*), provides in pertinent part:

"If the search of the sex offender registry results in the identification of a sex offender required to register pursuant to this chapter who has been *finally* classified by the board as a level 2 or level 3 offender under section 178K, the police shall disseminate [certain information] to the person making the inquiry" (emphasis added).

[8]General Laws c. 6, § 178E (*a*), provides in pertinent part:

"All custodial agencies shall inform the board immediately of any transfers of sex offenders so that there may be contact with the offender throughout the classification process. The [board] shall classify such a sex offender at least 10 days before the offender's earliest possible release date. The board shall promptly transmit the registration data to the police departments in the municipalities where the sex offender intends to live, maintain any secondary address and work and where the offense was committed and to the Federal Bureau of Investigation. The sex offender shall be informed by, and shall acknowledge in writing to, the agency which has custody of the sex offender of the duty to register . . . and of his right to submit to the board, according to section 178L, documentary evidence relative to his risk of reoffense, the degree of dangerousness posed to the public and of his duty to register . . . . ."

release, G. L. c. 6, § 178L (1) (*a*), and must classify the offender at least ten days before the offender's earliest possible release date, G. L. c. 6, § 178E (*a*). Moreover, the argument does not account for the fact that an initial classification becomes "final" if a sex offender fails to object to it, regardless of whether the offender continues to be incarcerated. G. L. c. 6, § 178L (1) (*a*).[9] That G. L. c. 6, § 178E (*a*), references the procedures of G. L. c. 6, § 178L, suggests that it also incorporates the latter's reference to "final" classifications.

In another form, the plaintiff's argument is that classifications of incarcerated sex offenders are not based on "substantial evidence," *Doe, Sex Offender Registry Bd. No. 10216* v. *Sex Offender Registry Bd.*, 447 Mass. 779, 787 (2006) (substantial evidence standard), because such individuals pose no current risk of reoffense or threat to the public. Again, there are several problems with this argument. Foremost among them is that the Legislature clearly intended that the board classify incarcerated sex offenders. G. L. c. 6, §§ 178E (*a*), 178L (1) (*a*). Second, in his case, the plaintiff was afforded an opportunity to argue and present evidence that he posed no current threat, *Doe, Sex Offender Registry Bd. No. 8725* v. *Sex Offender Registry Bd.*, 450 Mass. 780, 791-792 (2008), and his duty to register was delayed until his release.

However, the fundamental problem at the heart of both the plaintiff's arguments, in this case at least, is that they have been waived. "In ordinary circumstances, '[w]here the contention is that . . . [a] board is acting beyond its jurisdiction [or authority],

---

[9]General Laws c. 6, § 178L (1) (*a*), provides in pertinent part:

"Not less than 60 days prior to the release or parole of a sex offender from custody or incarceration, the board shall notify the sex offender of his right to submit to the board documentary evidence relative to his risk of reoffense and the degree of dangerousness posed to the public and his duty to register according to the provisions of section 178E. . . . Upon reviewing such evidence, the board shall promptly notify the sex offender of the board's recommended sex offender classification, his duty to register, if any, his right to petition the board to request an evidentiary hearing to challenge such classification and duty . . . . The board shall conduct such hearing in a reasonable time . . . . The failure timely to petition the board for such hearing shall result in a waiver of such right and the registration requirements, if any, and the board's recommended classification shall become final."

the board should have an opportunity to ascertain the facts and decide the question for itself . . . .' " *East Chop Tennis Club* v. *Massachusetts Comm'n Against Discrimination*, 364 Mass. 444, 452 (1973), quoting *Saint Luke's Hosp.* v. *Labor Relations Comm'n*, 320 Mass. 467, 470 (1946). Here, the plaintiff did not object to being subjected to final classification, choosing instead to argue that a level one classification was more appropriate.

The plaintiff confronts the same problem with his third and final argument. He asserts that his right to due process under the Fourteenth Amendment to the United States Constitution and art. 12 of the Massachusetts Declaration of Rights precluded the board from classifying him as a sex offender before he received his sentence for his Federal drug charge. Included in the statutory factors that the board should consider when making a classification are a sex offender's "conditions of release that minimize the risk of reoffense." G. L. c. 6, § 178K (1) (*c*). These include "whether the sex offender is under probation or parole supervision, whether such sex offender is receiving counseling, therapy or treatment, and whether such sex offender is residing in a home situation that provides guidance and supervision." *Id.* Thus, by classifying him before his sentence was announced and imposed, the plaintiff argues that the board denied him the opportunity to present mitigating evidence. However, there is nothing to suggest that the board's classification would have been different had it been presented with the plaintiff's release conditions.

As it stands, the plaintiff's classification is based on the presence of several aggravating factors, including the age of his victim, his failure to accept responsibility for his sex offense, and his criminal history. The plaintiff does not dispute that the evidence actually presented to the board was sufficient to satisfy the requirement that his classification be supported by "substantial evidence." *Doe, Sex Offender Registry Bd. No. 10216* v. *Sex Offender Registry Bd.*, *supra*. Rather, his argument is that the mix of evidence would have been materially different had classification occurred at a later time. However, there is nothing in the statute or regulations that requires the board to treat mitigating conditions of release as superseding other aggravating factors. To the contrary, the Legislature has established a flexible classification scheme. *Id.* at 787-788.

Regardless of the merits of his claim, however, the plaintiff's failure to raise this issue before the board constitutes waiver. *East Chop Tennis Club* v. *Massachusetts Comm'n Against Discrimination, supra.* His decision resulted in a record devoid of facts that could help a reviewing court in evaluating whether the board acted too soon in his case.

3. *Conclusion.* For the reasons discussed, we conclude that the plaintiff's classification was proper.

*Judgment affirmed.*