NOTICE:  Summary decisions issued by the Appeals Court pursuant to M.A.C. Rule 23.0, as appearing in 97 Mass. App. Ct. 1017 (2020) (formerly known as rule 1:28, as amended by 73 Mass. App. Ct. 1001 [2009]), are primarily directed to the parties and, therefore, may not fully address the facts of the case or the panel's decisional rationale.  Moreover, such decisions are not circulated to the entire court and, therefore, represent only the views of the panel that decided the case. A summary decision pursuant to rule 23.0 or rule 1:28 issued after February 25, 2008, may be cited for its persuasive value but, because of the limitations noted above, not as binding precedent.  See Chace v. Curran, 71 Mass. App. Ct. 258, 260 n.4 (2008).

COMMONWEALTH OF MASSACHUSETTS

APPEALS COURT

24-P-181

JOHN DOE, SEX OFFENDER REGISTRY BOARD NO. 528140

vs.

SEX OFFENDER REGISTRY BOARD.

MEMORANDUM AND ORDER PURSUANT TO RULE 23.0

The plaintiff, John Doe, appeals from a Superior Court judgment affirming a decision of the Sex Offender Registry Board (board) classifying him as a level two sex offender.  On appeal, Doe argues that the hearing examiner erred in (1) concluding that Doe and the victim had an extrafamilial relationship, and thereby in applying regulatory factor 7 (relationship between offender and victim); and (2) concluding that a public safety interest is served by Internet dissemination of Doe's registration information.  We affirm.

Background.  On March 25, 2021, Doe, then twenty-nine years old, assaulted a woman he was living with at the time.  The victim reported to the police that she and Doe were drinking

alcohol together when, at some point, Doe demanded to have sex with her, which she refused.  As a result, Doe jumped on top of the victim and grabbed her by the neck with both hands.  The victim stated that she was able to free herself, but Doe grabbed her again and threw her back onto the futon they were sitting on.  Doe once again got on top of the victim, forcefully grabbed her hair, and bit her on the lip, causing her to bleed.  The victim was able to free herself, stood up, and grabbed her cell phone to call for help.  Doe took the phone out of her hand and threw it on the ground.  The victim then pleaded with Doe to allow her to use the bathroom.

Once the victim was in the bathroom, Doe entered shortly thereafter and again attempted to have sex with her.  The victim eventually pushed Doe out of the bathroom, got dressed, and went back out to the living room, where she was able to retrieve her phone and text a friend for help, who in turn called 911.

When the police arrived, the victim informed them that she had been assaulted by her roommate, Doe.  The victim also told the police that she and Doe had known each other for just over three years and had been living together.  She went on to state that, although they were not in an official relationship, they "share[d] occasional intimacy."  The police observed that the victim had a large cut on her lip and a reddened area on her

2

chest.  They also saw a broken coffee table, a shattered entertainment center, and several items strewn on the floor within the apartment.  Doe fled the apartment when the police arrived but was arrested a short time later when he returned to the area.

After he was in police custody, Doe admitted to the police that he and the victim were drinking alcohol earlier in the evening and that he became upset when the victim refused to have sex with him.  Doe stated that he had known the victim for about three years and that they have been living together for "a while."  He also confirmed that they occasionally "share[d] intimate moments."

On October 6, 2021, Doe pleaded guilty to attempted indecent assault and battery on a person fourteen or older,[1] assault and battery on a family or household member, and intimidation of a witness.  On all three counts, Doe was given a two-year committed sentence, six months to serve, with the balance suspended until October 5, 2023.

On February 17, 2023, following a classification hearing before the board, Doe was ordered to register as a level two sex

---

[1] This charge was reduced from assault with intent to rape, in violation of G. L. c. 265, § 24.

3

offender.[2]  On November 6, 2023, a judge of the Superior Court affirmed the board's classification.

Discussion.  1.  Standard of review.  We review de novo a judge's consideration of an agency decision.  See Doe, Sex Offender Registry Bd. No. 523391 v. Sex Offender Registry Bd., 95 Mass. App. Ct. 85, 89 (2019).  In reviewing a board's decision, "we 'give due weight to the experience, technical competence, and specialized knowledge of the agency.'"  Doe, Sex Offender Registry Bd. No. 205614 v. Sex Offender Registry Bd., 466 Mass. 594, 602 (2013), quoting G. L. c. 30A, § 14 (7).  "A reviewing court may set aside or modify [the board's] classification decision where it determines that the decision is in excess of [the board's] statutory authority or jurisdiction, violates constitutional provisions, is based on an error of law, or is not supported by substantial evidence."  Doe, Sex Offender Registry Bd. No. 496501 v. Sex Offender Registry Bd., 482 Mass. 643, 649 (2019) (Doe No. 496501), citing G. L. c. 30A, § 14 (7).  "Substantial evidence is 'such evidence as a reasonable mind might accept as adequate to support a conclusion.'"  Doe, Sex

_____

[2] In February 2022, the board notified Doe of his duty to register as a level three sex offender.  Doe challenged that decision and received a de novo hearing in December 2022, resulting in the level two classification.

4

_Offender Registry Bd. No. 10800_ v. _Sex Offender Registry Bd._, 459 Mass. 603, 632 (2019), quoting G. L. c. 30A, § 1 (6).

To classify an individual as a level two sex offender, the hearing examiner must make three explicit findings by clear and convincing evidence: "(1) that the risk of reoffense is moderate; (2) that the offender's dangerousness, as measured by the severity and extent of harm the offender would present to the public in the event of reoffense, is moderate; and (3) that a public safety interest is served by Internet publication of the offender's registry information." _Doe No. 496501_, 482 Mass. at 644.

2. _Relationship between offender and victim_. Doe argues that the evidence was insufficient to support the hearing examiner's conclusion that his relationship with the victim was extrafamilial. We disagree.

The regulation defining factor 7 explains that "[t]he number of potential victims substantially increases when offenders choose to sexually offend against extrafamilial victims" and that "[h]aving victims outside the family relationship is empirically related to an increased risk of reoffense." 803 Code Mass. Regs. § 1.33(7)(a)(2) (2016).[3] Thus,

---

[3] The regulation was amended in 2025. See 803 Code Mass. Regs. § 1.33(7) (2025).

5

if an offender sexually offends against an extrafamilial victim, factor 7 applies with risk-elevating weight; if the victim is intrafamilial, factor 7 is neutral.  See Doe, Sex Offender Registry Bd. No. 524553 v. Sex Offender Registry Bd., 98 Mass. App. Ct. 525, 533 (2020).  Extrafamilial is defined by the regulation to include "[a]ny persons who are family member substitutes (e.g. foster, step-relatives, or any other type of familial household 'live-in' relationship) who lived in the same household with the offender for less than two years prior to the offending behavior."  803 Code Mass. Regs. § 1.33(7)(a)(2).  In contrast, for a victim to be considered intrafamilial, the parties must have lived together for two or more years.  See 803 Code Mass. Regs. § 1.33(7)(a)(1).  Whether a victim is extrafamilial or intrafamilial is a "subsidiary fact" pertaining to an offender's risk of reoffense that must be proved by a preponderance of the evidence.  See Doe No. 496501, 482 Mass. at 656.

Here, contrary to Doe's arguments, the board proved by a preponderance of the evidence that the victim was extrafamilial to Doe.  The evidence presented at the classification hearing regarding the nature of Doe's relationship with the victim came from both the victim's and Doe's statements to police.  For example, the victim characterized herself and Doe as "roommates"

6

who shared occasional intimacy.  Additionally, both Doe and the victim told police that they had known one another for about three years and that they had been living together at the time Doe assaulted the victim.[4]  Importantly, there was no evidence presented that Doe and the victim had lived in the same household for two or more years prior to the assault.  See 803 Code Mass. Regs. § 1.33(7)(a)(2).  Furthermore, Doe did not offer any evidence that contradicted the victim's characterization that they were roommates who shared occasional intimacy.  Even putting aside how long they had lived together, the hearing examiner could view this roommate relationship as similar to the "family member substitute[]" or "familial household 'live-in' relationship" the regulation envisions.  As a result, it was not unreasonable for the hearing examiner to conclude that Doe and the victim were roommates and that their relationship was extrafamilial.  See John Doe, Sex Offender Registry Bd. No. 23656 v. Sex Offender Registry Board, 483 Mass. 131, 139 (2019) (Doe No. 23656) ("[o]ur review of a hearing examiner's decision does not turn on whether, faced with the same set of facts, we would have drawn the same conclusion, but

---

[4] Doe makes a passing argument for the first time on appeal that this evidence amounts to unreliable hearsay.  The argument is waived.  See John Doe, Sex Offender Registry Bd. No. 3974 v. Sex Offender Registry Board, 457 Mass. 53, 56 (2010) (failure to raise issue before board constitutes waiver).

7

only whether a contrary conclusion is not merely a possible but a necessary inference" [citation omitted]).

Doe also asserts that the hearing examiner "chose to ignore" and demonstrated a "blatant disregard" for relevant evidence suggesting that the victim's relationship with Doe was not extrafamilial. He contends this "relevant evidence" includes the fact that Doe was charged with assault and battery on a family or household member, in violation of G. L. c. 265, § 13M. We disagree. The definition of a family or household member under G. L. c. 265, § 13M, serves a different purpose from and does not control the meaning of extrafamilial as set forth by the board's regulations.[5] See G. L. c. 6, § 178K (1) (instructing board to consider relationship between offender and victim in determining offender's risk of reoffense and degree of dangerousness).[6]

---

[5] Under the criminal statute, the victim's status as a family or household member is an aggravating factor. In contrast, in the board's classification scheme, such a status may indicate that the offender has a lower risk of reoffense.

[6] We also disagree with Doe that the hearing examiner engaged in a mechanical or "checklist" application of the factors. Rather, the hearing examiner identified each regulatory factor applied and explained the reason for its application. As such, the hearing examiner's "[analytical] path may reasonably be discerned," NSTAR Elec. Co. v. Department of Pub. Utils., 462 Mass. 381, 387 (2012), quoting Costello v. Department of Pub. Utils., 391 Mass. 527, 535-536 (1984), from the decision, and it is clear that "the classification is based

3.  <u>Internet publication of registration information</u>.  Doe makes multiple arguments regarding how the hearing examiner erred in concluding that a public safety interest is served by the online publication of Doe's registration information. First, Doe repeats that the hearing examiner "did not consider that Doe's relationship with the victim was intrafamilial."  As noted above, the board proved by a preponderance of the evidence that Doe had an extrafamilial relationship with the victim.  Doe further contends that the hearing examiner "did not adequately explain why the evidence supported a conclusion that Doe presents a moderate degree of dangerousness."  To the contrary, we agree with the board that the hearing examiner "applied the regulatory factors to the evidence and articulated his findings in a thoughtful analysis."  The board is also correct that the hearing examiner, notwithstanding Doe's ultimate plea to a lesser crime, "explicitly stated that the facts supported a finding that Doe committed assault with intent to rape, which is defined as a sexually violent offense."  See G. L. c. 6, § 178C.

on a sound exercise of informed discretion rather than the mechanical application of a checklist or some other reflex," <u>Doe, Sex Offender Registry Bd. No. 136652</u> v. <u>Sex Offender Registry Bd.</u>, 81 Mass. App. Ct. 639, 651 (2012).  Furthermore, to the extent Doe takes issue with the weight assigned to any factor, it is well established that the hearing examiner has broad discretion to determine how much weight to ascribe to each factor, and we discern no abuse of that discretion here.  See <u>Doe No. 23656</u>, 483 Mass. at 139.

9

Accordingly, the hearing examiner did not err in concluding that Doe's level two classification was supported by clear and convincing evidence, and that a public interest is served by the online publication of his registration information. See Doe No. 496501, 482 Mass. at 644.

                                    Judgment affirmed.

                                    By the Court (Desmond,
                                      Sacks & Brennan, JJ.[7]),

                                    Clerk


Entered:  August 19, 2025.

---

[7] The panelists are listed in order of seniority.