NOTICE: Summary decisions issued by the Appeals Court pursuant to M.A.C. Rule 23.0, as appearing in 97 Mass. App. Ct. 1017 (2020) (formerly known as rule 1:28, as amended by 73 Mass. App. Ct. 1001 [2009]), are primarily directed to the parties and, therefore, may not fully address the facts of the case or the panel's decisional rationale. Moreover, such decisions are not circulated to the entire court and, therefore, represent only the views of the panel that decided the case. A summary decision pursuant to rule 23.0 or rule 1:28 issued after February 25, 2008, may be cited for its persuasive value but, because of the limitations noted above, not as binding precedent. See Chace v. Curran, 71 Mass. App. Ct. 258, 260 n.4 (2008).

COMMONWEALTH OF MASSACHUSETTS

APPEALS COURT

24-P-776

JOHN DOE, SEX OFFENDER REGISTRY BOARD NO. 216728

vs.

SEX OFFENDER REGISTRY BOARD.

MEMORANDUM AND ORDER PURSUANT TO RULE 23.0

The plaintiff appeals from his classification as a level three sex offender, challenging what he characterizes as a "checklist" approach by the Sex Offender Registry Board (SORB) hearing examiner (examiner), maintaining that the examiner arbitrarily and capriciously applied three regulatory risk-elevating factors, and asserting that Internet publication was not warranted. We affirm.

Background. The plaintiff sexually assaulted five stranger victims over a period of approximately two weeks. The most violent and penetrative assault was the oral rape of a twenty-two-year-old woman (victim 1) whom the plaintiff approached from behind as she walked down a public street. The plaintiff held a

knife to the woman's throat and directed her to keep walking, bringing her to a dark driveway.  There, the plaintiff forced victim 1 to kneel, threatened to cut her, and told her to do what he wanted and he would let her go.  The plaintiff then orally raped the woman, ejaculating in her mouth.  He then walked her, again at knifepoint, to a car, where he pushed her into the passenger seat and ripped open her coat, removed her shirt and bra, licked and touched her breasts, and told her to hold his penis like a "lollipop."  During this second oral rape, the plaintiff again ejaculated in the victim's mouth, instructing her to swallow.

Just six days later the plaintiff grabbed his second victim (victim 2) from behind as she waited for a bus.  Pushing her face against a fence, he said, "be quiet.  Walk with me."  He grabbed her breast and her buttocks and poked her in the ribs with what she believed to be a knife.  Victim 2 hit the plaintiff with her left elbow and fled to an approaching bus.

After being questioned about the assaults on victims 1 and 2, the plaintiff admitted to them along with three other indecent assaults on women strangers within the same month as the assaults on victims 1 and 2.  He grabbed his third and fourth victims (victims 3 and 4) by the buttocks on public streets in separate incidents on the same day.  Approximately

ten days later, also on a public street, he grabbed his fifth victim (victim 5) by the buttocks and then, when she turned to look at him, he pulled her headphones off and threw them at her.

With respect to the assaults on victims 1 and 2, the plaintiff pleaded guilty to two counts of aggravated rape, one count of kidnapping, one count of assault with intent to rape, two counts of assault with a dangerous weapon, and one count of indecent assault and battery on a person age fourteen or over. With respect to the assaults on victims 3, 4, and 5, the plaintiff pled guilty to three counts of indecent assault and battery on a person age fourteen or over. He received a sentence of incarceration followed by a period of forty years of supervised probation. While he was incarcerated, the plaintiff undertook sex offender treatment at the North Central Correctional Institution in Gardner in 2015 and also spent approximately three years receiving sex offender treatment at the Massachusetts Treatment Center.

Discussion. "A reviewing court may set aside or modify SORB's classification decision where it determines that the decision is in excess of SORB's statutory authority or jurisdiction, violates constitutional provisions, is based on an error of law, or is not supported by substantial evidence." Doe, Sex Offender Registry Bd. No. 496501 v. Sex Offender

Registry Bd., 482 Mass. 643, 649 (2019), citing G. L. c. 30A, § 14 (7).  "Substantial evidence is 'such evidence as a reasonable mind might accept as adequate to support a conclusion.'"  Doe, Sex Offender Registry Bd. No. 10800 v. Sex Offender Registry Bd., 459 Mass. 603, 632 (2011), quoting G. L. c. 30A, § 1 (6).  "We give due weight to the experience, technical competence, and specialized knowledge of the agency, as well as to the discretionary authority conferred upon it" (quotation and citation omitted).  Doe, Sex Offender Registry Bd. No. 523391 v. Sex Offender Registry Bd., 95 Mass. App. Ct. 85, 88 (2019).

"A hearing examiner has discretion . . . to consider which statutory and regulatory factors are applicable and how much weight to ascribe to each factor . . . ."  Doe, Sex Offender Registry Bd. No. 68549 v. Sex Offender Registry Bd., 470 Mass. 102, 109-110 (2014) (Doe No. 68549).  "[O]ur review does not turn on whether, faced with the same set of facts, we would have drawn the same conclusion as an [examiner] . . . , but only whether a contrary conclusion is not merely a possible but a necessary inference" (quotation and citation omitted).  Id. at 110.

To classify an offender as level three an examiner must determine "that the risk of reoffense is high and the degree of

4

dangerousness posed to the public is such that a substantial public safety interest is served by active dissemination . . . ." G. L. c. 6, § 178K (2) (c). See Doe, Sex Offender Registry Bd. No. 10216 v. Sex Offender Registry Bd., 447 Mass. 779, 788 (2006) (presence of "high-risk" factors lends support to examiner's decision to classify plaintiff as level three offender).

1. "Checklist approach." Before us, the plaintiff asserts for the first time that the examiner improperly followed a "checklist approach" in analyzing the plaintiff's history and characteristics rather than employing the reasoned analysis required by law. See Doe, Sex Offender Registry Bd. No. 11204 v. Sex Offender Registry Bd., 97 Mass. App. Ct. 564, 574 (2020). Because the plaintiff failed to raise this argument before the instant appeal, it is waived. Doe, Sex Offender Registry Bd. No. 3974 v. Sex Offender Registry Bd., 457 Mass. 53, 57-58 (2010). We follow the rule that "[i]n the absence of a statutory directive to the contrary, the administrative remedies should be exhausted before resort to the courts" (quotation omitted), id. at 57-58, because "when a party neglects to raise an issue during agency proceedings, the reviewing court lacks a record on which to evaluate questions of statutory authority or jurisdiction." Id. at 58.

To the extent it can be considered a separate argument, the plaintiff's related claim that the examiner erred in weighing the high-risk and risk-elevating factors against the risk-mitigating factors is also unavailing. A hearing examiner "has discretion . . . to consider which statutory and regulatory factors are applicable and how much weight to ascribe to each factor . . . ." Doe, Sex Offender Registry Bd. No. 22188 v. Sex Offender Registry Bd., 96 Mass. App. Ct. 738, 742 (2019) (Doe No. 22188), quoting Doe No. 68549, 470 Mass. at 109-110. In assessing the degree of danger the plaintiff posed as high, the examiner noted that the plaintiff sexually assaulted five women strangers in public locations over a few-week period, and that the assault of victim 1 involved two oral rapes at knifepoint. The examiner analyzed the risk of reoffense by noting that the victims were strangers to the plaintiff (factor 7), that the plaintiff threatened victim 1 with a knife during the sexual assaults (factor 8), and that all five sexual assaults occurred in public locations (factor 16). He also noted the number of victims (factor 22) and that the plaintiff had a history of rule violations while incarcerated (factor 12). Finally, the examiner considered the test results and articles submitted by the plaintiff (factors 35 and 37). We are mindful that determining which factors to apply "and how much weight to

ascribe to each factor," are matters within the hearing examiner's discretion, and, "a reviewing court is required to 'give due weight to [the examiner's] experience, technical competence, and specialized knowledge'" (citation omitted). Doe No. 68549, supra at 109-110. We will not disturb this discretionary weighing in these circumstances.

2. Application of risk-elevating factors 9, 19, and 35. The plaintiff maintains that the hearing examiner's application of three risk-elevating factors was arbitrary and capricious. We disagree and conclude that the hearing examiner acted within his considerable discretion in applying each of these factors.

The plaintiff contends that the examiner could not apply factor 9 (alcohol and substance use) at all because his "purported decades old use of alcohol or drugs" was too remote in time and the plaintiff had experienced "[fifteen] years of admittedly forced sobriety" since. The examiner acted within his discretion in applying this factor, to which he assigned minimal weight because "[d]rugs and alcohol are behavioral disinhibitors," 803 Code Mass. Regs § 1.33(9)(a) (2016), and the plaintiff had admitted to weekly alcohol use, and use of marijuana up to four times weekly, beginning at age thirteen. The hearing examiner noted the plaintiff's plan to discontinue alcohol and marijuana use, and also acknowledged that substance

7

use was "not a factor in his sexual offending."  But the regulations permit consideration of this evidence and the examiner was not obligated to acknowledge the plaintiff's "forced sobriety" in custody, nor to explain how he weighed either the passage of time or the plaintiff's future plans.  See Doe No. 22188, 96 Mass. App. Ct. at 742.

The plaintiff's argument about factor 19 is no more persuasive.  He orally raped victim 1 twice, so the examiner applied factor 19 (level of physical contact) with increased weight, concluding that "[p]enile penetration implicates this factor with increased weight as to dangerousness."  It was not arbitrary and capricious for the examiner to conclude this without explicitly weighing the 1998 Hanson and Bussière article submitted by the plaintiff.  SORB's 2002 regulations "state that they are based on the 'available literature' regarding the risk factors enumerated in the statute," including this article, Doe, Sex Offender Registry Board No. 151564 v. Sex Offender Registry Bd., 456 Mass. 612, 620 (2010), citing 803 Code Mass. Regs. § 1.40(7) (2002), and the applicable 2016 regulations also expressly considered this article.  See 803 Code Mass. Regs. §§ 1.33 (2016).  Accordingly, the plaintiff's submitted article was adequately accounted for by the regulations and the examiner need not have separately explained how he considered it.

The examiner similarly committed no error in his consideration of factor 35. This factor requires the examiner to "consider evaluative reports, empirically-based risk assessment instruments, or testimony from a licensed mental health professional" about "psychological and psychiatric issues . . . as they relate to the offender's risk of reoffense." 803 Code Mass. Regs. § 1.33(35)(a) (2016). The plaintiff maintains that (1) the examiner was unqualified to "interpret," and thus should not have considered, the plaintiff's Static-99R and STABLE-2007 risk assessment test results, and (2) the risk assessments were administered four years before the hearing, rendering their results stale. We are skeptical that either of these arguments rises to the level of appellate argument, see Mass. R. App. P. 16 (a) (9), as appearing in 481 Mass. 1628 (2019), but consider them to the extent possible.

The examiner afforded "some weight" to the tests, "to the extent each was correctly applied to the facts, and . . . only to the extent they may be seen as a general indicator of risk of re-offense." Consideration of the tests was within the hearing examiner's authority, as the language of factor 35 makes plain, and he properly limited the weight given to these tests. And, even if it was improper for the examiner to consider these tests, we are confident that the error did not affect the

9

classification.  See Sex Offender Registry Bd. No. 22188 v. Sex Offender Registry Bd., 101 Mass. App. Ct. 797, 804-805 (2022).

3.  Internet publication.  The plaintiff focuses on the hardships and restrictions sex offenders face when they are required to register.  While we do not question that these challenges exist, they do not provide the plaintiff with an argument for reversing the order of Internet publication.  Neither are we persuaded by the plaintiff's reiterated arguments about the age of his offenses, his otherwise clean criminal record, and his largely successful prison stay.  As we noted earlier, these assertions amount to a disagreement with the hearing examiner's weighing of the evidence, a matter that is squarely within an examiner's discretion.  Doe No. 68549, 470 Mass. at 109-110.

The evidence supported the hearing examiner's level three classification of the plaintiff, and the examiner appropriately considered the nature and severity of the plaintiff's offenses in assessing whether Internet publication was warranted.  See, e.g., <u>Doe, Sex Offender Registry Bd. No. 23656</u> v. <u>Sex Offender Registry Bd</u>., 483 Mass. 131, 144-147 (2019).

<u>Judgment affirmed</u>.

By the Court (Hershfang,
Hodgens & Smyth, JJ.[1]),

Clerk

Entered:  January 20, 2026.

---

[1] The panelists are listed in order of seniority.