NOTICE:  Summary decisions issued by the Appeals Court pursuant to M.A.C. Rule 23.0, as appearing in 97 Mass. App. Ct. 1017 (2020) (formerly known as rule 1:28, as amended by 73 Mass. App. Ct. 1001 [2009]), are primarily directed to the parties and, therefore, may not fully address the facts of the case or the panel's decisional rationale.  Moreover, such decisions are not circulated to the entire court and, therefore, represent only the views of the panel that decided the case.  A summary decision pursuant to rule 23.0 or rule 1:28 issued after February 25, 2008, may be cited for its persuasive value but, because of the limitations noted above, not as binding precedent.  See Chace v. Curran, 71 Mass. App. Ct. 258, 260 n.4 (2008).

COMMONWEALTH OF MASSACHUSETTS

APPEALS COURT

24-P-1042

JOHN DOE, SEX OFFENDER REGISTRY BOARD NO. 528260

vs.

SEX OFFENDER REGISTRY BOARD.

MEMORANDUM AND ORDER PURSUANT TO RULE 23.0

The plaintiff, John Doe (Doe), appeals from a Superior Court judgment affirming his classification by the Sex Offender Registry Board (SORB) as a level three sex offender.  On appeal, Doe claims that SORB's decision was not supported by substantial evidence where (1) the evidence did not support the hearing examiner's findings that Doe penetrated victim one or that he sexually abused victim two, and (2) the hearing examiner's application of risk factors concerning repetitive and compulsive behavior (factor 2), diverse victim type (factor 21), and victim impact statement (factor 38) was arbitrary and capricious.[1]  We

_____

[1] Doe also argues that his liberty and privacy interests outweigh the public interest of accessing his biographical information.  From the record before us, this argument is raised

affirm.

1. <u>Victim one</u>. Doe claims that the evidence before the hearing examiner did not support his finding that Doe penetrated victim one's anus. As a result, Doe claims the hearing examiner misapplied the level of physical contact (factor 19). We disagree.

"To determine the validity of an agency's decision, the reviewing court must determine whether the decision is supported by substantial evidence." <u>Doe, Sex Offender Registry Bd. No. 10216</u> v. <u>Sex Offender Registry Bd</u>., 447 Mass. 779, 787 (2006). "Substantial evidence is such evidence as a reasonable mind might accept as adequate to support a conclusion" (quotation and citation omitted). <u>Id</u>. "In the context of administrative proceedings, hearsay evidence bearing indicia of reliability constitutes admissible and substantial evidence." <u>Doe, Sex Offender Registry Bd. No. 10800</u> v. <u>Sex Offender Registry Bd</u>., 459 Mass. 603, 638 (2011). Where there is an allegation of sexual misconduct that did not result in a conviction for a sex offense, the hearing examiner may consider the facts underlying the charges where such facts are proven by a preponderance of

for the first time on appeal and therefore we treat it as waived. See <u>Doe, Sex Offender Registry Bd. No. 3974</u> v. <u>Sex Offender Registry Bd</u>., 457 Mass. 53, 59 (2010).

the evidence.  See Doe, Sex Offender Registry Bd. No. 3177 v.

Sex Offender Registry Bd., 486 Mass. 749, 754-755 (2021).

Doe's seven year old daughter (victim one) disclosed during a sexual assault intervention network (SAIN) interview that her father took her "clothes off," and "took his pants and underwear off."  She explained that Doe "put his balls in her butt and on her back" and that he "was moving his body up and down."  She also said that during the sexual assault she was "faced down on the floor," that Doe's "[balls] felt hard like a rock."  Importantly, the young girl said that as a result of Doe's conduct, "her bottom hurt."  Doe also told her not to say anything to anybody.

Based on the entirety of victim one's statement, especially that Doe "was moving his body up and down" and that her "bottom hurt," the hearing examiner had the discretionary authority to reasonably infer that Doe's sexual assault against his daughter included some degree of penile penetration of her anus.  See 803 Code Mass. Regs. 1.19(1)(h) (2016) (hearing examiner may "draw all reasonable inferences" from evidence).[2]

---

[2] Doe suggests that because the hospital staff, who examined victim one, did not find that penetration occurred or that there was a presence of semen or trauma, it was error for the hearing examiner to find that Doe penetrated her anus with his penis. However, in fact, the hospital staff only did a "cursory" examination of victim one, and a rape kit was not performed.  In any event, the absence of semen or the absence of trauma to the

3

2. Victim two. Doe also claims that the hearing evidence, in the form of hearsay, did not support the hearing examiner's finding that Doe sexually abused victim two and thus led him to misapply one high-risk and four risk-elevating factors. We disagree.

To determine the reliability of hearsay statements found in records admitted at a board classification hearing, the hearing examiner must first consider the circumstances in which the statements were made. See Doe, Sex Offender Registry Bd. No. 136652 v. Sex Offender Registry Bd., 81 Mass. App. Ct. 639, 649 (2012). Among the factors the hearing examiner should consider are "the general plausibility and consistency of the victim's or witness's story, the circumstances under which it is related, the degree of detail, the motives of the narrator, the presence or absence of corroboration and the like," and the consistency of the hearsay incident with other, known behavior (citation omitted). Doe, Sex Offender Registry Bd. No. 523391 v. Sex Offender Registry Bd., 95 Mass. App. Ct. 85, 89 (2019). In the end, we must ask whether "it was reasonable for the examiner to

victim's anus would not establish that penetration did not occur. See Commonwealth v. Rice, 441 Mass. 291, 304 (2004). Nor does it matter that Doe was acquitted of rape and only convicted of the lesser included offense of indecent assault and battery on a child. See Doe, Sex Offender Registry Bd. No. 3177, 486 Mass. at 754-755.

4

admit and credit the facts described in the hearsay evidence" (quotation and citation omitted).  Id.

Victim two, a four year old girl, and her six year old sister, were left in Doe's care while their mother was at work. Doe was the then-boyfriend of the mother's sister, whose house the girls were at.  The mother returned from work and could hear the girls upstairs in her sister's bedroom.  Upon opening the door, she saw victim two in bed with Doe who had a "bulge" in his pants that looked like an erection.

After retrieving the girls and returning home, the mother asked them why victim two was in bed with Doe.  The sister replied that victim two was "rubbing" Doe's back and stomach area because Doe said "his belly hurt."  At this point, the mother took her daughters to their grandmother's home. Initially believing the incident was innocent, and to dispel any impropriety, the grandmother asked the girls if Doe had put anything in their mouth or "bum" or "front," or touched their "boobs" or "bum."  The girls said, "no."  She then asked if Doe had touched their "front," the sister said, "no," and victim two began to cry and said, "yes . . . he did."  The grandmother

asked if Doe had touched her under her pants, and she said, no, "he did it from the top."[3]

From this evidence, the hearing examiner properly determined that Doe had touched victim two's "front" over her pants because the hearsay was both plausible and detailed.  See Doe, Sex Offender Registry Bd. No. 523391, 95 Mass. App. Ct. at 89 (hearing examiner considers whether hearsay detailed and plausible for reliability determination).  In addition, this evidence was corroborated by the mother's statement that Doe had an erection, and the victim's sister reporting that victim two had been "rubbing" Doe's back and stomach area.  Victim two's statements were detailed, plausible, and corroborated, which permitted the hearing examiner to conclude that Doe touched victim two's vagina over her pants.  See Doe, Sex Offender Registry Bd. No. 356011 v. Sex Offender Registry Bd., 88 Mass. App. Ct. 73, 77-78 (2015).[4]  Accordingly, the hearing examiner

---

[3] There is nothing in the record to support Doe's claim that the grandmother "pressured" or coerced the girls with her questions.  In fact, the grandmother's initial reaction to the matter was that it was probably "something innocent."

[4] Doe's assertion that victim two's account was contradicted by other evidence is tenuous at best.  That the young child victim was unable to identify her vagina during the SAIN interview does not equate to an inability to credit her as to where Doe touched her.  The hearing examiner was entitled to credit the child's statement, which was an answer to questions posed in descending anatomical order from mouth to "boobs," to her "bum" and then her "front," and that her "front" was a

6

properly applied the risk-elevating factors relevant to the sexual abuse of victim two.

3. <u>Repetitive and compulsive behavior (factor 2)</u>. Doe also claims the hearing examiner erred in applying factor 2 to him because he had not been "confronted," "caught," or "charged" relative to his rape of victim one before he committed the indecent assault and battery on victim two. See 803 Code Mass. Regs. § 1.33(2)(a) (2016). We disagree.

This claim is based on Doe's misstatement of the record in his brief, i.e., that Doe was not "confronted" or "caught" or "charged" before he committed his sex offense on victim two. In fact, in 2015, a Springfield Police detective spoke to Doe and informed him of his daughter's allegations and that he had an outstanding warrant. Doe told the detective that he would call her back in order for him to come in and give a statement, but he never did. Doe's sexual assault of victim two occurred in 2017, long after he had been confronted with victim one's allegation. Thus, contrary to Doe's factual misstatement, he was confronted and made aware of victim one's 2015 rape allegation prior to his 2017 sexual assault on victim two.

---

reference to her vagina. Indeed, victim two's understanding of where she was touched was further exemplified by her clarification that Doe touched her over her pants, and not under them, i.e., where her vagina is located.

7

Because of this, the hearing examiner properly applied factor 2 (Repetitive and Compulsive Behavior) and factor 3 (Adult Offender with a Child Victim) at increased weight.[5]

4. <u>Diverse victim type (factor 21)</u>. Doe further claims that the hearing examiner erred in applying factor 21, diverse victim type, because three studies suggest this risk-elevating factor was not applicable to him. We disagree.

According to Doe, the scientific research, which underlies factor 21, proves that having intrafamilial and extrafamilial victims does not, as stated by factor 21, increase the risk or danger posed by an offender. In support of this argument, Doe cites three articles that SORB considered in its promulgation of factor 21.[6]

---

[5] Doe also claims that the hearing examiner improperly based his conclusions on the "mechanical application of a checklist" rather than on a qualitative analysis of the plaintiff's history and personal circumstances. See <u>Doe, Sex Offender Registry Bd. No. 11204</u> v. <u>Sex Offender Registry Bd</u>., 97 Mass. App. Ct. 564, 574 (2020). However, based on the record before us, this claim was not raised in Doe's motion for judgment on the pleadings in Superior Court. In this posture, the claim is waived. See <u>Doe, Sex Offender Registry Bd. No. 3974</u>, 457 Mass. at 59.

[6] The articles are as follows: Hanson & Harris, Where Should We Intervene? Dynamic Predictors of Sexual Offense Recidivism, 27 Crim. Just. & Behav. 6 (2000); Heil, Ahlmeyer, & Simons, Crossover Sexual Offenses, Sexual Abuse: J. Res. & Treatment (2003); Kleban, Chesin, Jeglic, & Mercado, An Exploration of Crossover Sexual Offending, Sexual Abuse: J. Res. & Treatment (2013).

8

Factor 21 applies to offenders whose "sexual misconduct traverse victim types, such as multiple ages, gender, or relationship categories."  803 Code Mass. Regs. § 1.33(21)(a). Here, Doe offended against victims of different relationship categories, i.e., intrafamilial and extrafamilial, and accordingly, this factor applies.  Contrary to Doe's claims, the hearing examiner was not free to disregard the text of the regulation based on scientific studies.  The hearing examiner is obligated to apply SORB's factors as written.  See 803 Code Mass. Regs. § 1.33 ("the Board shall use the following factors to determine a sex offender's level of risk of reoffense" [emphasis added]).

5.  <u>Victim impact statement (factor 38)</u>.  Finally, Doe claims that the hearing examiner erred by determining that victim impact statements written by his daughter and her mother were indicative of the level of danger he posed, which is contrary to both SORB's enabling statute and regulations.  We disagree.

Pursuant to G. L. c. 6, § 178K (1) (<u>k</u>), hearing examiners and SORB, as part of the classification analysis, are mandated to "review any victim impact statement."  Also, factor 38(a) "recognizes the substantial impact sex offenses have on victims."  803 Code Mass. Regs. § 1.33(38)(a).

9

While Doe is correct that the hearing examiner did not explain how the victim impact statement specifically affected the level of danger Doe posed to the community, we note that the hearing examiner merely "acknowledged" the impact statement with respect to Doe's "degree of dangerousness," but did not assign it any weight nor categorize it as a risk-elevating factor.  In any event, acknowledging the victim's (and her mother's) physical and psychological injuries is important to the consideration of the harm Doe is capable of causing should he reoffend.

6.  <u>Conclusion</u>.  For the foregoing reasons, we conclude that the hearing examiner's classification decision was supported by substantial evidence and not arbitrary or capricious.  Therefore, the Superior Court judgment affirming SORB's decision to classify Doe as a level three sex offender is affirmed.

<u>Judgment affirmed</u>.

By the Court (Blake, C.J., Meade & Tan, JJ.[7]),

Clerk

Entered:  March 11, 2026.

---

[7] The panelists are listed in order of seniority.

10